SPINIELLO CONSTRUCTION COMPANY *v.*
TOWN OF MANCHESTER ET AL.
(10439)

HEALEY, PARSKEY, SHEA, GRILLO and SPONZO, Js.

Argued November 10, 1982—decision released March 22, 1983

*Aaron Slitt,* with whom were *Susan Kloct,* and, on the brief, *William Gerace,* for the appellant (defendant Raymond International Builders, Inc.).

*William J. Shea,* for the appellee (named defendant).

*Emanuel N. Psarakis,* with whom, on the brief, was *Charles B. Spadoni,* for the appellee (plaintiff).

SPONZO, J. The plaintiff obtained a permanent injunction restraining the defendants, the town of Manchester (hereinafter Manchester) and Raymond International Builders, Inc. (hereinafter Raymond), from entering into or performing certain public works contracts. Raymond alone has appealed although Manchester has raised the issue of mootness.

Manchester was engaged in an extensive program of cleaning and lining water pipes to improve its water system. This program was divided into approximately twenty components. The town charter, § 5-22,[1] mandated competitive bidding for con-

---

[1] Section 5-22 of the Manchester Code is set forth fully below: "Before any department, commission, officer or employee of the Town or the Board of Education shall make any purchase of or contract for any construction, supplies, materials, equipment or service, except personal services, provided by Town employees and officers and professional services, involving an expenditure of more than twenty-five hundred dollars, opportunity shall be given for competitive bidding in writing by at least three bona fide bidders under such rules and regulations as the Board of Directors or the Board of Education, as the case may be, may establish. Before any department, commission, board, officer or employee of the Town shall sell any real or personal property of the Town, opportunity shall be given for competitive bidding in writing by at least three bona fide bidders under

struction contracts costing in excess of $2500. In May, 1980, Manchester publicly invited two separate bids on contracts known as #2 and #3. In its "Instructions to Bidders," Manchester reserved to itself the right to reject any or all bids. In addition, the instructions set forth certain requirements and guidelines such as (a) the prohibition of oral addenda to or interpretations of any bidding documents,[2] (b) the necessity that all requests for such interpretations be in writing with the resultant interpretations issued as written addenda and mailed to prospective bidders,[3] and (c) the prohibition of conditional bids.[4]

---

such rules and regulations as the Board of Directors or the Board of Education, as the case may be, may establish; and all moneys received from such sales shall be paid to the Collector of Revenue. Either of said Boards may waive the requirement for competitive bidding when the circumstances of a particular case do not permit a sufficient amount of time to fulfill the rules and regulations of that Board concerning competitive bids; or when a competitive bid is inappropriate; or when a competitive bid is impractical in that the Boards are unable to obtain competitive bids within the rules and regulations adopted by said Boards, which may provide for a limitation on the number of waivers in favor of any one firm, person or corporation. Any such waiver shall be in writing, certified by the appropriate Board, and shall set forth a specific substantial reason for such waiver and shall be filed in the Town Clerk's office as a public record."

[2] Section 7 of the instructions addresses oral addenda to pre-bid documents as follows: "No interpretation of the meaning of the plans, specifications or other pre-bid documents will be made to any bidder orally. All information given to bidders other than by means of the plans, specifications, or by addenda, as described below [in footnote 3 infra], is given informally and shall not be used as the basis of a claim against the Owner or the Engineer."

[3] The requirement of written requests and written interpretations is also set forth in section 7 of the instructions and reads: "Every request for such interpretation should be in writing addressed to Weston & Sampson Engineers, Inc., 10 High Street Boston, Massachusetts and to be given consideration must be received at least five days prior to the date fixed for the opening of bids. Any and all such interpretations and any supplemental instructions will be in the form of written addenda to the specifications which, if issued,

Three construction firms, including the plaintiff and Raymond, submitted separate bids on July 14, 1980. On contract #3 the plaintiff's bid ($268,450) was the lowest and Raymond's bid ($272,200) was next lowest. On contract #2 Raymond submitted the lowest bid ($397,860) and the plaintiff's bid ($399,160) was the next lowest. Unknown to the other bidders, a representative of Raymond contacted officials of Manchester on July 11, 1980, and inquired whether, in addition to the separate bids, it could file a reduced combined bid conditioned on both contracts being awarded to Raymond. The Manchester officials advised Raymond that it could submit such a proposal in addition to the separate bids. Despite the bid instructions which required written notice to all prospective bidders of interpretations of the bidding documents, no such notice was mailed to the plaintiff or to others.

On July 14, 1980, when the bids were opened publicly and in the presence of the plaintiff, the Raymond bid contained an additional provision that it would deduct the sum of $35,000 if both con-

will be mailed by certified mail with return receipt requested to all prospective bidders (at the respective address furnished for such purposes), not later than three days prior to the date fixed for the opening of bids. Failure of any bidder to receive any such addendum or interpretation shall not relieve such bidder from any obligation under his bid as submitted. All addenda so issued shall become part of the Contract Documents."

[4] Section 4 of the instructions prohibits conditional bids as set forth below: "The Owner may make such investigations as he deems necesary to determine the ability of the bidder to perform the work, and the bidder shall furnish to the Owner all such information and data for this purpose as the Owner may request. The Owner reserves the right to reject any bid if the evidence submitted by, or investigation of, such bidder fails to satisfy the Owner that such bidder is properly qualified to carry out the obligations of the Contract and to complete the work contemplated therein. Conditional bids will not be accepted."

tracts were awarded to it. Since the plaintiff was not aware of this change in the bidding process, it had not submitted a discount proposal conditioned on the award of both contracts. The plaintiff filed a written protest which was denied. Also, the plaintiff requested permission to file a combined bid but this request was denied by Manchester on the ground that the bids had already been opened. On August 1, 1980, the plaintiff was notified that both contracts were awarded to Raymond.

The trial court found that the officials of Manchester acted out of the highest motives to do what was best for Manchester, namely, to save approximately $31,000 by awarding both contracts to the same bidder. The court also found that there was no corruption involved in the bidding process. The court did find, however, that the Raymond bid was conditional and prohibited by the bidding instructions and, under all the circumstances, the process amounted to favoritism toward Raymond. Finally, the court found that the plaintiff, a New Jersey corporation, was not a taxpayer in the defendant town.

In its appeal Raymond has raised the following two main issues: (1) the plaintiff, as an unsuccessful bidder and a nontaxpayer, has no standing to bring this action in the absence of fraud or corruption, and (2) if the plaintiff did have standing, the court erred in finding that the bidding was invalid.

It is a well established principle that "[m]unicipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit the taxpayers, not the bidders; they should be construed

to accomplish these purposes fairly and reasonably with sole reference to the public interest." *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 702, 448 A.2d 180 (1982); *Austin* v. *Housing Authority,* 143 Conn. 338, 345, 122 A.2d 399 (1956); 10 McQuillin, Municipal Corporations (3d Ed. Rev.) § 29.29. Where the municipality "reserves the right to reject any and all bids, no bidder can claim any contractual rights until he has been awarded the contract." 10 McQuillin, supra, § 29.77. An honest exercise of discretion by a municipality which has reserved such a right will not be disturbed by the courts so long as its officials observe good faith and accord all bidders just consideration in accordance with the purpose of competitive bidding. Courts will intervene to prevent the exercise of that discretion to deny a bid, therefore, only where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials. *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* supra, 703; *Joseph Rugo, Inc.* v. *Henson,* 148 Conn. 430, 434, 171 A.2d 409 (1961); 10 McQuillin, supra.

Although Manchester reserved the right to reject any or all bids, it violated its bidding instructions by accepting a conditional combined discount bid based on an oral addendum known only to Manchester and Raymond. No written notice of the interpretation of a bidding instruction was mailed to prospective bidders, including the plaintiff. By permitting Raymond to submit a conditional bid when other bidders were not afforded the same opportunity, Manchester precluded the other bidders from competing on equal terms. It defeated

the object and integrity of the competitive bidding by unintentionally exhibiting favoritism to Raymond. While Manchester's actions were taken in good faith in an effort to obtain the best contract for its residents, judicial relief is warranted where municipal action amounts to an erosion on the integrity of the bidding statute. 10 McQuillin, supra, § 29.83. It is entirely possible that Manchester would have benefited financially if the other bidders had the same opportunity to submit a conditional or combined bid. Under the circumstances of this case the plaintiff had standing and there was ample support for the court's conclusion that the initial bidding was invalid. There ·is a growing trend for courts to permit one who has been aggrieved by a refusal to award a public contract pursuant to lowest responsible bidder provisions to also vindicate the public interest by challenging such arbitrary or capricious action by governmental officials. *Merriam* v. *Kunzig,* 476 F.2d 1233 (3d Cir.), cert. denied, 414 U.S. 911, 94 S. Ct. 233, 38 L. Ed. 2d 149 (1973); *Scanwell Laboratories, Inc.* v. *Shaffer,* 424 F.2d 859 (D.C. Cir. 1970); see *Data Processing Service* v. *Camp,* 397 U.S. 150, 90 S. Ct. 827, 25 L. Ed. 2d 184 (1970); *Barlow* v. *Collins,* 397 U.S. 159, 90 S. Ct. 832, 25 L. Ed. 2d 192 (1970).

There is no merit to another claim of error by Raymond to the effect that the trial court erred in finding that the discount amount of $35,000 was discussed by Raymond and Manchester officials prior to the submission of the bid. Although the record does not indicate a discussion of that sum prior to submission, Raymond has failed to demonstrate how that finding would affect the final result. It was, therefore, harmless error. *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 286 A.2d 308 (1971).

Finally, .Raymond claims that there was a variance between the plaintiff's allegations in its complaint and the proof, sufficient to defeat the cause of action. Although the plaintiff did allege collusion, conspiracy, fraud and corruption, it also alleged favoritism to such an extent as to defeat the competitive bidding process.[5] This allegation was adequate to permit the introduction of evidence in support of the trial court's conclusions.

In oral argument before this court, counsel for Manchester contended that this appeal is moot because Manchester readvertised for bids on several contracts, including contracts #2 and #3. These contracts were awarded to a third party who completed the work allegedly making ineffective any contractual rights which Raymond might assert against Manchester. Raymond countered with the argument that the plaintiff had posted a bond in the injunctive proceedings as ordered by the trial court. In effect, Raymond claims that its potential right upon the bond is a sufficient interest in the outcome of the appeal to require this court to accept jurisdiction.

Spiniello filed a bond in the amount of $25,000 as a prerequisite to the granting of its application for a temporary injunction and a permanent injunction. The purpose of the bond is to indemnify the defendants from any damages which they might sustain if the plaintiff failed to prosecute the action to effect. General Statutes § 52-472. "Where

---

[5] Paragraph 20 of the complaint reads as follows: "In awarding said contracts to Raymond and rejecting plaintiff's bids under the foregoing circumstances, the Town failed to observe good faith or to accord plaintiff just consideration and engaged in a fraudulent and corrupt course of conduct in favor of Raymond and against plaintiff in violation of defendant's charter, and bid documents so as to defeat the competitive bidding process."

a . . . court has granted a permanent injunction, the parties will already have had their trial on the merits, and, even if the case would otherwise be moot, a determination can be had on appeal of the correctness of the trial court's decision on the merits, since the case has been saved from mootness by injunction bond." *Accurate Forging Corporation* v. *UAW Local No. 1017*, 189 Conn. 24, 27–28 n.5, 453 A.2d 769 (1983), quoting *University of Texas* v. *Camenisch*, 451 U.S. 390, 396, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981). Accordingly, Manchester's mootness claim is without merit.

There is no error.

In this opinion the other judges concurred.