[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff brings this action seeking a permanent injunction restraining "the defendant from executing a [certain] contract or issuing a notice to proceed or permitting any work to be performed" on a certain sewer project (the Project).
FACTS
In August of 1990 the defendant put the Project out for public competitive bidding by issuing a document entitled "Information for Bidders". In response, plaintiff submitted a sealed bid on September 19, 1990 wherein it quoted a gross sum of $1,091,261.50. On September 19, 1990 the defendant opened all of the eight sealed bids which were submitted and the plaintiff's was the lowest gross bid. The plaintiff's bid complied with all the bidding and contract requirements. Defendant, when putting the project out to bid, reserved the right to reject any or all bids and to accept the bid deemed to be in the best interest of defendant. The bid package called for prices on 37 separate items which would be required to complete the project. The quantity of items was estimated for the purpose of obtaining a unit price for each. Payment for each item was to be based on the number of units actually installed at the bid price per unit.
When the bids were opened defendant believed plaintiff "was in fact the low bidder". The second lowest bidder was J.F. Barrett Sons, Inc. (Barrett) at $1,102,430.00. CT Page 5712 Defendant decided that the quantities contained in the bid documents for two of the 37 items would be much smaller than projected, i.e., items 26 and 27, Temporary Sheet Piling and Sheet Piling in Place. A basis for that conclusion was the unusually low bid prices submitted for the particular items by the majority of bidders. Afterwards, the defendant's consulting engineers, who had drawn up the plans and specifications for the project, consulted with the City Engineer and the Director of Public Works, both of whom have personal knowledge of the proposed work site and soil conditions. They then determined that the project area contains extremely high quantities of rock and that the excavation of that rock would not require the use of as much sheet piling as contained in the estimated quantities in the bid package. Defendant had in fact installed a sewer pipe in the area some years before and that required only a few hundred feet of sheet piling because of the rock.
The defendant then determined that no more than 4,000 square feet of the item 26, Temporary Sheet Piling, would be required for the project and that no item 27, Sheet Piling Left in Place, would be required. Using these revised quantities, all eight bids were re-evaluated, using the unit prices that were submitted by the contractors. The defendant then revised the contract quantities expected to be used, and it determined that with the revisions the lowest bid was that of Barrett, for $1,042,430.00 and the second lowest was plaintiff, for $1,091,252.50. The defendant then awarded the contract to Barrett, whose resulting bid was more than $48,000 below that of plaintiff.
After the bids were submitted and the revisions made the defendant treated all bids using the same math. The prices actually submitted by those contractors were used.
On November 30, 1990 defendant informed plaintiff in writing that defendant had rejected plaintiff's bid. That writing said
 "This decision was based on the facts that after evaluation of the bids, it became apparent that little if any sheeting would be used in this protect and that the most probable area for overrun of the quantities estimated in the contract would be in the item #7, trench rock excavation."
At that time defendant stated that it was awarding the contract to the second lowest bidder, Barrett. CT Page 5713
In the original specifications Item 26 was 26,000 square feet. In Addendum #1 of August 29, 1990 that item was reduced to 13,000 square feet. This addendum was sent to all parties before the bids were received.
The defendant's municipal code requires that all bids "shall be submitted sealed." Section 42-7a. It also requires that, "A tabulation of all bids received shall be posted for public inspection." Section 42-7c. id. It does not provide that a tabulation of all bids as adjusted shall be posted.
The code requires that all contracts, with non-relevant exceptions, shall be awarded to the lowest responsible bidder. Section 42-8. id. Barrett was not the lowest responsible bidder.
This system of after the fact changes which aid only one or two bidders clearly undermines the integrity of the bidding process.
It is unlawful for any city officer to make any contract except under the city charter. Section 42-2c. Id.
This court finds no evidence of fraud.
LAW
Plaintiff has a right to bring this action. Spiniello Construction Co. v. Manchester, 189 Conn. 539.
The defendant's municipal code requires competitive bidding. Section 42-6.
On the facts alleged and proved plaintiff may only prevail if it proves that defendant's conduct "defeated the very object and integrity of the competitive bidding process." Spiniello Construction Co. v. Manchester, supra 544.
 "In order to attain competitive bidding in its true sense, bids must be invited under circumstances which afford a fair and reasonable opportunity for competition. Consequently, it is essential that bidders, so far as possible, be put on terms of perfect equality, so that they may bid on substantially the same proposition, and on the same terms . . . . Plans and specifications must be furnished to all alike, and they must contain all information necessary to enable the bidders to prepare their bids." CT Page 5714
10 McQuillin, Municipal Corporations (3d Ed. Rev.) 29.52.
"[W]here the unit price method is employed, fair estimates of the quantities to be ordered should, wheresoever possible, be specified in advance of the bidding to avoid any possible juggling of the figures in aid of a favorite bidder." Id.
Barrett did not change its bid but defendant changed it. This is prohibited as a "change in the bidding process." Spiniello, supra, 543-544.
Upon examination of this entire process the court concludes that the next time bids are solicited by this defendant potential bidders may have grave doubts that they are being given specifications "sufficiently definite and certain that all may know what each is bidding upon." 10 McQuillin 29.52. In addition some responsible bidders will certainly conclude that "possible juggling of the figures in aid of a favorite bidder" may occur. id. 29-52. Browning v. Freeholders of Bergen, 79 N.J.L. 494, 76A. 1054 (E A. 1910). This is destructive not only of the integrity of the bidding process but of the process itself.[1]
The whole purpose of giving estimations of quantities ahead of time is so that each bidder will bid on the same facts and the results will produce a basis for the "uniform comparison of bids." Walter v. McClellan, 113 App.Div. 295,99 N.Y.S. 78, 79 (App.Div. 1906). When the municipal authority changes the quantities that were bid on after the bids are received there is no longer a basis which may be used for comparison.
Defendant's code itself gives support for this concept saying that "All specifications shall be definite and certain and shall permit competition." West Haven Municipal Code 42-3D.
The defendant is enjoined from executing the contract with Barrett; issuing any notice to proceed or permitting any work to be done on the Project except after future compliance with the statutes of the state, the regulations and ordinances of the City of West Haven and this opinion.
N. O'NEILL, J.