[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: APPLICATION FOR TEMPORARY INJUNCTION
The plaintiff, Appleby and Cutone, Inc. ("Appleby"), a Connecticut corporation, has brought this action against The Town of Old Lyme and its Board of Selectmen ("The Town"), seeking a Temporary Injunction pursuant to Connecticut General Statutes Section 52-471. Appleby alleges that The Town, after inviting it and other contractors to submit proposals for a project known as the Reconstruction of Whippoorwill Road (the "Project"), rejected Appleby's bid, despite the fact that it was the lowest bid, and awarded the contract to another bidder, Machnik Construction, Inc. ("Machnik"). The plaintiff alleges that The Town's actions violated the object and integrity of the public bidding process. It also claims that The Town violated Connecticut General Statutes Section 49-41 by waiving the statutory requirement of a 100% payment bond.
The court finds the following pertinent facts:
In June of 1991, the Town solicited sealed bids for the Project as described in certain bidding documents so that The Town's Selectmen could determine the "qualified bidder" and award a contract. Because the state did not contribute funds to this Project, The Town was not obligated to follow state statutory requirements regarding competitive bids. It nevertheless undertook to bid the Project competitively and agreed to abide by statutory competitive bidding procedures. Five contractors were invited to bid, three of which, including Appleby and Machnick, actually submitted proposals.
At the public opening of the bids on July 19, 1991, it was noted and recorded that Appleby had submitted a bid in the total amount of $494,238.50 and that Machnick's bid was $501,081.50. The third contractor's bid was in the amount of $536,002.50. The Selectmen thereupon asked The Town engineer to review the bids and to advise the Selectmen with regard to the awarding of the contract. At a special public meeting of the Board of Selectmen on July 24, 1991, there was a discussion which focused on the discrepancy among bids for the "maintenance and protection of traffic" line item and the concern of the Selectmen that Appleby's appropriation for this item was insufficient. Acting in what First Selectman James Rice termed "the best interests of the Town", the Selectmen, upon motion made and duly seconded, unanimously voted to award the contract to Machnick.
Following this decision, the Selectmen subsequently decided to delete "maintenance and protection of traffic" entirely from the Project. On August 2, 1991, Machnik was formally awarded the contract for a total contract price of $486,031.50 and was authorized to proceed with the work. CT Page 8019
Shortly after the July 24 special meeting of the Board of Selectmen, the plaintiff instituted this action in the Superior Court for the New London Judicial District and sought ex parte relief enjoining The Town from awarding the contract to anyone other than Appleby. The court, Leuba, J., denied ex parte relief and scheduled the matter for a full hearing, which was held on August 26, 27 and 29, 1991.
At the hearing, and in their memoranda of law, the parties have rightly focused their attention on the threshold issue of the standing of one who has been aggrieved by a refusal to award a public contract pursuant to lowest responsible bidder provisions to bring a legal action against the governmental entity and/or the officials that failed to award it the contract. The parties appear to agree that there is a "growing trend" to grant standing to such a plaintiff to "vindicate the public interest by challenging. . . arbitrary or capricious action by governmental officials." Spiniello Construction Co. v. Manchester, 189 Conn. 539, 545 (1983).[1]
"When a municipality . . . reserves the right to reject any and all bids . . . an honest exercise of discretion by a municipality which has reserved such a right will not be disturbed by the courts so long as its officials observe good faith and accord all bidders just consideration in accordance with the purpose of competitive bidding. Courts will intervene to prevent the exercise of that discretion to deny a bid, therefore, only where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials." Spiniello, p. 544.
In oral argument, the plaintiff conceded that it was not claiming fraud, corruption or favoritism[2] on the part of the defendants, but rather that the "object and integrity of the competitive bidding process" had been defeated by the actions of The Town in rejecting the plaintiff's bid on the basis of The Town's claimed concern that Appleby would not be able to provide proper traffic control at the cost that it had allotted for this activity. The Town presented some evidence of past difficulties in assuring proper traffic control during the course of another project in which Appleby had been the successful bidder. The plaintiff presented evidence to the effect that the amount budgeted in its proposal for traffic control was an estimate only, that it would adjust the various accounts to be certain that traffic control would be properly maintained to The Town's satisfaction, and that the procedure of making rough estimates for individual line items was common industry practice. The CT Page 8020 plaintiff's principal evidence for its claim that the defendants had undermined the integrity of the bidding process was the uncontested fact that, subsequent to the decision to award the contract to Machnick, The Town unilaterally deleted the traffic control item from the Project and decided to provide traffic control through its own police constables, despite the fact that it was not clear that it could do so at less cost than either Appleby or Machnik.
The plaintiff relies principally on Spiniello, supra, in making its claim for standing and places special emphasis on the Spiniello court's statement that "(w)hile Manchester's actions were taken in good faith in an effort to obtain the best contract for its residents, judicial relief is warranted where municipal action amounts to an erosion on the integrity of the bidding statute." Spiniello at 545.
The plaintiff misreads Spinello in its assumption that it was the intention of the court to grant a private right of action to unsuccessful bidders. In Ardmare Construction Co. v. Freedman, 191 Conn. 497, 504 (1983), our Supreme Court stressed that its intention was to adopt the view taken in Scanwell Laboratories Inc. v. Shaffer, 424 F.2d 859, 864 (D.C. Cir. 1970), that the "public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a `private attorney general.'"
In Spiniello, the Town of Manchester had violated its own bidding instructions by accepting a conditional combined discount bid based on an oral addendum known only to the Town and the ultimately successful bidder. This action had the effect of not affording other bidders the same opportunity granted to the bidder who eventually was awarded the contract. This action thus "defeated the object and integrity of the competitive bidding by unintentionally exhibiting favoritism to" the winning bidder. Spiniello at 544, 545. It was the "possibility that the Town of Manchester would have benefited from having all bidders have the opportunity to submit a conditional or combined bid" that led the court to conclude that the plaintiff had standing to bring the action in an effort to vindicate the public's interest.
In this case, no claim has been made that any of the bidders, intentionally or unintentionally, was given an advantage during the bidding process. Rather, the claim is that The Town's action in rejecting the plaintiff's low bid on the basis of its professed concern over the plaintiff's ability to CT Page 8021 provide traffic control services was arbitrary and capricious. The evidence, however, showed that, whether or not that decision was truly justified by the facts, it was undertaken after careful review and after open discussion at a public special meeting of the Board of Selectmen. Although The Town's subsequent decision to delete "maintenance and protection of traffic" from the project is somewhat curious, the plaintiff has presented no convincing evidence to show that either that decision nor the manner in which The Town decided to reject the plaintiff's low bid in favor of one slightly higher can be said to have violated the object and integrity of the competitive bidding process. The plaintiff therefore does not have standing to pursue its application for a temporary injunction.
In light of the plaintiff's lack of standing, this court does not reach the merits of the plaintiff's contention that by allegedly waiving the statutory requirement for a 100% performance and payment bond, the entire bid solicitation was undertaken in violation of state statute.
The application for a Temporary Injunction is therefore denied.
SILBERT, J.