[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION DECLARATORY JUDGMENT AND INJUNCTION
Plaintiffs bring this action by verified complaint in three counts, each claiming for a separate plaintiff loss because the defendant City of Danbury (City) rejected its bid on a City building project (the Project) based on a City ordinance favoring bidders with principal places of business in the City.
Facts
The parties have entered into the following stipulation in regard to facts:
"The parties Drywall Associates, Inc. ("Drywall"), Kennedy Electrical Contractors, Inc. ("Kennedy"), Steward Mechanical Service, Inc. ("Stewart") (the Plaintiffs) and City of Danbury ("City") (a Defendant) stipulate to the finding of the following facts:
1. The Plaintiffs are each responsible contractors engaged in the construction business.
2. The Defendant City of Danbury is a municipal corporation organized and operating under the laws of the State of Connecticut.
3. On or about November 10, 1992, the defendant City CT Page 6593 sent Invitations to Bid to the Plaintiffs, among others, for a construction project known as "Danbury School Reorganization, Alternative Center for Education," (Bid No. 11-92-3-07) located at Locust Avenue, Danbury, Connecticut.
4. Said Invitation to Bid was also published in The News-Times of Danbury on November 17, 1992. (Ex. A)
5. Pursuant to said Invitation, Plaintiffs each obtained copies of the Plans, Specification and bidding documents from the City.
6. Each of the Plaintiffs returned a completed bid to City by the deadline of December 10, 1992.
7. On or about December 10, 1992, the City received and opened sealed bids from the Plaintiffs, among others.
8. On February 4, 1993, the Board of Awards for the City of Danbury rejected all of the bids received, including the bids of the Plaintiffs, and voted to rebid the project.
9. A new Invitation to Bid, identical in all relevant portions to the first Invitation for the project, was prepared and copies of the new Invitation to Bid were sent to the Plaintiffs and others on March 11, 1993.
10. On March 17, 1993, the new Invitation to Bid was also published in The News-Times of Danbury. (Ex. B)
11. The Plaintiff Drywall picked up one set of the Plans, Specifications and bidding documents from the City on March 26, 1993; Plaintiff Kennedy picked up or was mailed one such set on March 18, 1993; and Plaintiff Stewart picked up or was mailed one such set on March 17, 1993.
12. The Plans, Specifications and bidding documents obtained by the Plaintiffs in March, 1993 were identical in all relevant respects to the Plans, Specifications and bidding documents obtained by them in November, 1992.
13. Each of the Plaintiffs returned a completed bid to the City by the deadline of April 6, 1993.
14. Each of the Plaintiffs' bids was the lowest bid CT Page 6594 for its respective project number.
15. Each of the Plaintiffs is a "responsible bidder" within the definition of the City Ordinances.
16. Section 8-7 of the Charter of the City of Danbury provides:
 "In the employment of mechanics, laborers and workmen in the construction, remodeling or repairing of any public building or other public works by the City, preference shall be given to citizens of the Danbury labor market area as established by the State Labor Commissioner in accordance with Chapter 557, Part III and Section 7-112 of the Connecticut General Statutes, as amended." (Ex. C)
17. On October 9, 1991, Sec. 2-149 of the General Ordinances of the City of Danbury took effect, which provides:
 ". . . (b) In accordance with the City of Danbury Charter provision(s) on preference to citizens of the Danbury labor market in the employment of workmen on a public works project, the purchasing department shall be authorized by the board of awards as established in section 2-149 hereof to allow a ten (10) percent differential in favor of resident bidders on all bids not exceeding one million dollars ($1,000,000) total contract price. (Ord. No. 425, 9-4-91)" (Ex. D)
18. On February 2, 1993, an amendment to Sec. 2-149 of the General Ordinances of the City of Danbury was enacted by the Common Council, which provides:
 ". . . (b) In accordance with the general intent of City of Danbury Charter provisions on preference to citizens of the Danbury labor market in the employment of workmen on a public works probject, [project] the purchasing department may be authorized by the board of awards as established in section 2-148 hereof to allow a ten (10) percent differential in favor of "city-based resident bidders" which shall be implemented in the following manner: CT Page 6595
 "Provided that such city-based resident bidder shall have met all other requirements set forth in this Article, any city-based resident bidder which has submitted a bid not more than ten (10) percent higher than the low bid and has agreed to accept the award of the bid at the amount of the low bid, the lowest responsible bidder shall be that one of the city-based resident bidders which had submitted the lowest bid.
 "For the purposes of this section, "city-based resident bidder" shall mean a business with its principal place of business located within the boundaries of the city of Danbury . . . (Ex. E)
19. The amendment was published in The News-Times of Danbury on February 12, 1993, and took effect thirty days thereafter, on March 14, 1993.
20. Both Invitations to Bid contain the following notice:
 "9. The owner reserves the right to waive any informalities in Bids; to reject any or all bids; or to accept the one Bid that in its judgement [judgment] will be in the best interest of the City." (Exs. A and B)
21. The Information for Bidders contains the following notices:
 "14. BASIS OF AWARD The Contract will, at the discretion of the City, be awarded on the basis of competitive bids to the lowest responsible eligible bidder.
 "15. REJECTION OF BIDS The City reserves the right to reject any and all bids, or to accept any bid should it deem [sic] it to be for its best interest to do so . . .
 "17. LIST OF PROPOSED SUBCONTRACTORS . . . Each Contractor is advised to review Article 48 of the Contract; Local Preference, and be prepared to provide evidence of conformance." (Ex. F) CT Page 6596
22. The Contract contains the following notice:
 "Art. 46. LAWS, ORDINANCES, AND REGULATIONS. The Contractor will be required to comply with all federal, state, county, and municipal laws, ordinances and regulations in any manner affecting those persons engaged or employed in the work, or in any way affecting the conduct of the work, either with respect to hours or labor or otherwise, and of all such orders and decrees of bodies or tribunals having any jurisdiction or authority over the same . . .
 "Art. 48. LOCAL PREFERENCE. The Contractor agrees to comply with the provisions of Danbury Municipal Charter Section 8-7 as well as provisions of Connecticut General Statutes Sections 7-112 and 31-52; and where applicable, sections 31-53 and 31-54, all as amended. In particular, the contractor agrees that in the employment of mechanics, laborers and workmen in the construction, remodeling or repairing of any public work, preference shall be given to citizens of the United States who are, and continuously for at least three (3) months prior to the date hereof have been, residents of the City of Danbury . . ." (Ex. G)
23. Aside from the notation "State Project No. 034-89-114A" on two title pages, there is no reference in the bid documents to the State of Connecticut as the source of funding for the project, nor to Conn. Gen. Stat. 10-287.
24. By letters dated April 22, 1993 from the City of Danbury, per Warren W. Platz, Purchasing Agent, and received by the Plaintiffs on April 26, 1993 (Exs. H, I and J), the City informed the Plaintiffs that it was awarding the respective contracts to the second lowest bidders in each of the respective project categories.
25. Each of the second lowest bids in Plaintiffs' respective project categories was by a "responsible bidder" within the definition of the City Ordinances, was within ten percent (10%) of the respective Plaintiff's lowest bid, and was by a "City-based resident bidder," who was willing to CT Page 6597 reduce its bid to the amount of the respective Plaintiff's lowest bid.
26. Were it not for the preference granted to the City-based resident bidders and their agreement to reduce their bid amounts to match the Plaintiffs' lowest actual bids, all pursuant to City ordinances 2-149, Plaintiffs, as the lowest responsible bidders, would have been awarded and executed their respective subject contracts." The court has read the exhibits mentioned but will not set them out in full.
In addition, the parties have agreed that the affidavit of Mayor Gene F. Eriquez (Eriquez) is admissible, as is the affidavit of Messrs. Stewart, Jones and DeLuca.
Paragraphs 6, 16 and 17 of each count of the complaint are as follows:
"6. Said project involved the renovation and rehabilitation of an educational facility owned and operated by the City of Danbury, and was to be funded, in whole or in part, through state funds and grants administered by the State of Connecticut Department of Education pursuant to Conn. Gen. Stat. 10-287.
16. As before, the rebid project was to be funded, in whole or in part, through state funds and grants administered by the State of Connecticut Department of Education pursuant to Conn. Gen. Stat. 10-287.
17. The award of the contracts on the rebid was to be made pursuant to Conn. gen. Stat. 10-287(b), which states:
 All orders and contracts for school building construction receiving state assistance under this chapter shall be awarded to the lowest responsible qualified bidder only after a public invitation to bid, which shall be advertised in a newspaper having circulation in the town in which construction is to take place, except those contracts or orders costing less than ten thousand dollars and those of an emergency nature, as determined by the commissioner CT Page 6598 of education, in which cases the contractor or vendor may be selected by negotiation, provided no fiscal regulations, ordinances or charter provisions conflict.
(Emphasis in original)"
As to paragraph 6 the defendant City filed the following answer:
"6. So much of the paragraph as alleges "[S]aid project involved the renovation and rehabilitation of an educational facility owned and operated by the City of Danbury," is admitted. The balance of the paragraph is denied. The City, however, does acknowledge that it has sought and received pre-approval for a state grant for reimbursement of project costs pursuant to Conn. Gen. Stat. Section 10-282 et seq., will apply for such a grant when the project is sufficiently progressed so as to render the City eligible, and expects reimbursement in full or in part."
As to paragraphs 16 and 17 it filed the following answers:
"16. Denied. The City, however, does acknowledge that it has sought and received pre-approval for a state grant for reimbursement of project costs pursuant to Conn. Gen. Stat. Section 10-282 et seq., will apply for such a grant when the project is sufficiently progressed so as to render the City eligible, and expects reimbursement in full or in part.
17. Denied.
"The State has not filed an Answer but has advised the court by letter of May 20, 1993, with copies to counsel, that it has no position in regard to this application for a declaratory judgment. Its "only role in this project will be to pay the City of Danbury the construction grant on a reimbursement basis."
The City states in its brief, page 3, ". . . the claims against the State would, if successful, result in the loss of State funding to the City."
The court cannot find that the City was involved here CT Page 6599 in any "cooperative purchasing arrangement" as referred to in the City's Ordinance 2-149(b).
Law
I. Anti-Trust
Our anti-trust statute, Conn. Gen. Stats. 35-25
et seq. states that, "Every contract, combination, or conspiracy in restraint of any part of trade or commerce is unlawful."
The passage of the ordinance by itself is not an anti-trust violation. Fisher v. Berkeley, 475 U.S. 260. However, the City did act by accepting three bids based on that ordinance. Those could constitute three contracts in restraint of trade or commerce. Because it is not necessary to this opinion the court does not decide that question.
II. Special Defenses
A. Estoppel
Defendant City has failed to sustain its burden of proof that plaintiff was estopped.
B. "Eligible Bidder"
The only basis for a requirement that a bidder be "eligible" is found in the bid documents. These bidders were each eligible. City has not sustained its burden of proof that any of the plaintiffs was not eligible. Ryan v. Scanlon, 117 Conn. 428, 434-435.
C. Standing
The plaintiffs have standing because they claim that the City has unquestionably violated the Conn. Gen. Stats.10-287. The process of "local preference" is equal to the "favoritism" prohibited by the holding in Spiniello Construction Co. v. Manchester, 189 Conn. 539, 543-545.
D. "Qualified Bidder" CT Page 6600
The project is designed to be funded in whole or in part by a state of Connecticut grant under Conn. Gen. Stats.10-287. That statute, in pertinent part, is as follows:
 Sec. 10-287. Installment payment of grants. Construction contracts subject to bid. Withholding of state grant payment; conditions. Submission of final grant application; forfeiture of state grant. (a) A grant under this chapter to meet project costs not eligible for state financial assistance under section 10-287a shall be paid in installments. . . .
 (b) All orders and contracts for school building construction receiving state assistance under this chapter shall be awarded to the lowest responsible qualified bidder only after a public invitation to bid, which shall be advertised in a newspaper having circulation in the town in which construction to take place, except those contracts or orders costing less than ten thousand dollars and those of an emergency nature, as determined by the commissioner of education, in which cases the contractor or vendor may be selected by negotiation, provided no local fiscal regulations, ordinances or charter provisions conflict.
The parties have agreed that each of the three plaintiffs made the "lowest bid" for its respective project and that each was a "responsible bidder." Thus, under the statute the only criteria left to be satisfied is proof that each was a "qualified bidder."
It is defendants' position that "the inclusion of the word `qualified' in . . . Section 10-287 explicitly allows the local government to apply a standard in addition to responsibility."
Our statute, 10-287, is not provided with its own set of definitions for the three adjectives but Conn. Gen. Stats.4a-59(a) defines the whole expression "lowest response qualified bidder for use in that section to mean",
 "the bidder whose bid is the lowest of those bidders possessing the skill, ability and integrity necessary to faithful performance CT Page 6601 of the work based on objective criteria considering past performance and financial responsibility."
The court uses that definition.
The City does not contend and has not proven that a plaintiff is not "qualified."
The ordinance is void as in conflict with Conn. Gen. Stats. 10-287.
A permanent injunction shall issue restraining the defendants from executing a contract, issuing a Notice to Proceed, permitting any work to be performed, or providing any funds in furtherance of work performed, or providing any funds in furtherance of work performed by any contractor other than the respective plaintiffs, absent a rebid of the subject contracts, on the City of Danbury, Alternative Center for Education Project, State Project No. 034-89-114-A, Project No. 92-37 (Drywall/Acoustical/Plaster), Project No. 52-41 (Plumbing/HVAC/Sprinkler), and Project No. 92-42 (Electrical).
The court enters a declaratory judgment that defendant City of Danbury's rejection of plaintiffs' bids was illegal and that City of Danbury Ordinance 2-149, as applied to a project funded in whole or in part with state funds, is illegal.
N. O'Neill, J.