[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: NOTION TO DISMISS
This case comes to this court on an application for a temporary and permanent injunction enjoining the defendant, Town of New Canaan, from continuing a contract for a project known as the "Elementary School Project" with the defendant Ashford Properties Construction, Inc. The plaintiff, Salce Contracting Associates, Inc. (hereinafter called Salce), brings this action in its capacity as an unsuccessful bidder on said project and also as a taxpayer of the State of Connecticut. The plaintiff Anthony H. Salce, Jr. seeks judicial relief solely as a taxpayer of the State of Connecticut.
The defendant Town of New Canaan has filed a Motion To Dismiss dated January 22, 1996. The defendant Town claims the plaintiffs lack standing to pursue this action and that it should be dismissed for lack of subject matter jurisdiction. The parties briefed this issue after the court heard the evidence and reviewed the exhibits.
The Town of New Canaan has experienced a shortage of classroom space for elementary school children. To meet this need, the Town approved a bond for $27,000,000.00 with $22,000,000.00 representing actual construction estimates for additions and renovations to the East Elementary School, the South Elementary School and the West Elementary School. This project constitutes the largest capital CT Page 4297 project in the history of the Town of New Canaan. In January of 1994 a Schools' Building Committee was selected. The Committee consisted of seven members, all residents of the Town of New Canaan. John Kelly was chosen by the Committee as its Chairman. The charge of the Committee was to make recommendations to the Board of Selectmen with regard to the project. The Committee first selected an architect and later an owner's representative. The Committee adopted a procedure of identifying criteria and then discussing them with each candidate. Fletcher-Thompson was selected as the architect and Peter Sztaba was chosen as the owner's representative.
In September 1995, bids were invited for the project. In addition to asking for separate bids for each of the three schools, the invitation also requested a combination bid for all three schools from any general contractor. The invitation contained the following language:
 "After review of all factors, including terms and conditions, qualifications and price, the Town of New Canaan Elementary Schools Building Committee reserves the right to accept or reject any and all bids, or any part thereof, or waive defects in same, or accept any proposal or a combination of proposals deemed to be in the best interest of the Town of New Canaan, Connecticut."
The invitation notified bidders that their form must be accompanied by a completely filled in and properly executed copy of the contractor's qualification questionnaire and each supplementary bid form must also be accompanied by a contractor's qualification questionnaire.
On November 16, 1995, the sealed bids from 15 contractors were opened. Chairman Kelly conducted the opening. Salce was the lowest combination bid at $17,776,000.00. A.P. Construction was second at $18,358,000.00. A.P. was the lowest bidder for the South Elementary School, AARK Construction was lowest bidder for the West Elementary School and Salce had the lowest bid for the East Elementary School.
Following the opening, Chairman Kelly advised the bidders that the Committee would be reviewing contractor qualifications over the next two weeks and also would be conducting reference checks. He indicated that an interview process would be initiated and the lowest qualified and responsible bidder, not necessarily the lowest CT Page 4298 bidder, would be selected on or about December 7, 1995. He reiterated to the bidders the right of the Committee to reject any and all bids. The Committee met to go over the references and developed questions for the forthcoming interview process. The final six contractors were specifically requested to bring their teams to the interviews. The interviews commenced on the evening of December 5, 1995. At that time, interviews were conducted with AARK, Salce and A.P. None of the contractors objected to the interview process, and each were asked to comment on the project and to respond to essentially the same areas of concern. The plaintiff Salce came to the interview with two employees. The interviews were approximately one hour in length. On Wednesday, December 6, 1995, the Committee conducted one hour interviews with Associated Construction and P. Francini Company. Thereafter, the Committee went into executive session from approximately 9:00 P.M. to 12:00 A.M.
Chairman Kelly, using an easel and paper, solicited comments from the Committee members with regard to choosing a single contractor versus three separate contractors for each of the schools. He recorded the concerns and priorities of the individual members on the sheets which form Exhibit H. After reviewing the advantages and disadvantages of a single or multiple contractors, the Committee chose to proceed with a single general contractor.
The Committee then turned to the task of determining who was the lowest responsible and qualified bidder. The Committee decided that in addition to bid, consideration had to be given to references, project management, construction experience and availability of resources. The Committee determined that each of these factors should be given a weight, and each of the members was requested to assign a weight. The results are recorded on page 3 of Exhibit H. In addition to the seven Committee members, Arvid Anderson, of the Board of Education, and Peter Sztaba, owners's representative, were allowed to participate in the evaluation. Although supplying information and some materials, the architect had determined not to participate in the actual evaluation and selection of the successful bidder.
In order to provide a guide for organizing the thoughts of the Committee members and to avoid selecting the contractor on a purely subjective basis, Chairman Kelly provided each member with a Contractor Interview Form which contained the five factors and had a 1 to 5 rating schedule; 1 being poor, 2 being fair, 3 being satisfactory, 4 being good, and 5 being excellent. Each member CT Page 4299 separately recorded his or her evaluation ratings, and the results were recorded on page 4 of Exhibit H. That page shows that Salce's overall rating for references were 1.6, project management at 2.1, construction experience at 2.8, and availability of resources at 1.8. A.P. Construction had 4.9 for references, 4.7 for project management, 4.5 for experience, and 4.6 for availability of resources. One of the Committee members suggested that the bid be added and weighted to the other four factors. Those results are shown on the last page of Exhibit H. Even with the full weight of the lowest bid, that tally shows Salce with a final rating of 2.62. A.P.'s ratings fully weighted was 4.12.
After recording the results, Chairman Kelly conducted deliberations with the Committee which lasted for approximately one hour. Towards the end of the discussion, one of the Committee members suggested the possibility of litigation since it appeared that Salce, the low bidder, was not considered qualified by the Committee. He, therefore, asked each person if notwithstanding Salce's low bid differential of more the $600,000.00, was he or she comfortable in recommending another contractor or had he or she any reservations about doing so. Chairman Kelly, while not conducting a formal vote, obtained a unanimous consensus that the lowest responsible qualified bidder was A.P. Construction.
He reported this to the to the First Selectman and he also called all of the bidders including Salce. On January 16, 1996, Mr. Moreno, relying on the good faith efforts of the Committee, executed the construction contract with A.P. on behalf of a unanimous Board of Selectmen. This lawsuit was instituted on or about that date, claiming a temporary and permanent injunction against the Town. The defendant thereupon filed its Motion To Dismiss for lack of standing. This court then commenced an evidentiary hearing on the motion.
Practice Book § 143 provides the authority for the use of Motion to Dismiss to test subject matter jurisdiction. Standing is a pre-requisite to jurisdiction. "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of a court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." Ardmare Construction Co. v. Freedman,191 Conn. 497, 501 (1983).
Our Supreme Court "has consistently followed the view that an CT Page 4300 unsuccessful bidder has no standing to challenge the award of a public contract." Ardmere, [Ardmare] supra. Where a municipality reserves the right to reject any and all binds, an unsuccessful bidder can claim no contractual right. Spiniello Construction Co. v.Manchester, 189 Conn. 539 (1983). In Ardmere, [Ardmare] the Supreme Court recognized that to allow unlimited judicial intervention at the request of an unsuccessful bidder would create delays in the government procurement process and concomitant expense, clearly contrary to the public interest.
"An honest exercise of discretion by a municipality which has reserved such a right will not be disturbed by the courts so long as its officials observe good faith and accord all bidders just consideration in accordance with the purpose of competitive bidding. Courts will intervene to prevent the exercise of that discretion to deny a bid, therefore, only where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials."Spiniello Construction Co. v. Manchester, supra, 189 Conn. 544. Municipal boards and officials are vested with wide discretion, and their decision, when based upon an honest exercise of that discretion, will not be interfered with by the courts, even if erroneous. Vallaco v. Derby, 27 Conn. Sup. 135 (1966). Moreover, there is a presumption of regularity and legality of the actions of public boards and officials. Vellaco, supra, 137.
An unsuccessful bidder seeking injunctive relief has the burden of alleging and proving fraud, corruption, favoritism or that the very object and integrity of the competitive bidding process is defeated by the conduct of the municipal officials. Courts should not interfere with a local government decision of who is the lowest responsible bidder without clear or strong proof that the decision is tainted by a Spiniello exception.
The complaint does not allege that the plaintiffs are residents or taxpayers of the Town of New Canaan. Instead, they claim to be Connecticut Taxpayers. In order to have taxpayer's standing to challenge municipal conduct, a plaintiff must be a taxpayer of the defendant municipality and the plaintiff must allege and prove that improper municipal conduct will probably cause him to suffer an increase in taxes or some pecuniary or other great injury. Double I Limited Partnership v. Town of Glastonbury,14 Conn. App. 77, 80 (cert. denied) 208 Conn. 802 (1988). CT Page 4301
The court finds that the plaintiffs lack standing on this issue because they are not taxpayers of the defendant municipality, they have failed to allege and prove improper municipal conduct, and there is no evidence of injury.
A clear reading of the cases indicates that an honest exercise of discretion by a municipality which has reserved the right to reject any and all bids, will not be disturbed so long as the officials observe good faith and accord all bidders just consideration. The Building Committee was dealing with an urgent project and a rigorous time schedule. It was the largest capital project in the Town's history, and it demanded a qualified contractor who had the resources available to get the project done by August 15, 1997, with as little disruption as possible for the school children. They had a difficult task before them which they handled in a businesslike way with an intent to give each contractor fair treatment and consideration. The end result was an objective opinion rendered in good faith which is upheld by this court.
The court finds the facts in this case substantially different from the fact pattern in Spiniello. Also, the court is persuaded by the language in Ardmare:
 "We are unable to agree with the trial court that the commissioner's actions so undermined the competitive bidding process as to fall within the exception recognized in Spiniello. There was no allegation of fraud or favoritism, nor was either proven. The plaintiff attempted to establish only that the practice was so arbitrary as to undermine the bidding statute. This case, however, involve none of the factors we considered significant in Spiniello. There, the municipality had imparted information to one bidder that it had not provided other bidders. See Spineillo Construction Co. v. Manchester, supra, 189 Conn. at 542, 456, A.2d 1199. Thus, parity of information no longer existed among the bidders as envisioned by the statute. In this case, however, the commissioner had not informed any bidder of its requirement. The construction company which received the contract award was not given any special advantage over the plaintiff in submitting its bind, nor was it privy to any secret information.
Noticeably absent in this case are elements traditionally CT Page 4302 thought to undermine the competitive bidding process. The commissioner did not apply its requirement inconsistently or in a discriminatory fashion. Nor was there any proof that the commissioner was acting in bad faith. In short, the commissioner made a good faith interpretation of the competitive bidding statute requirements, and applied it in a consistent fashion. The plaintiff was therefore without standing to challenge the award to the contract."
For all of the aforementioned reasons, the Motion To Dismiss is granted as the plaintiff is without standing to challenge the award of the contract.
KARAZIN, J.