[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON INJUNCTION 
This is an action brought by Hartford Roofing, Inc. seeking a temporary and permanent injunction restraining the defendants, Town of Thompson and its Board of Education, from executing a contact with the defendant Silktown Roofing, Inc. for re-roofing work to certain school buildings because such contract would violate the competitive bidding provisions of General Statutes § 10-287 (b). The parties were heard in this court April 14, 1998, at which time before the taking of evidence, the court denied defendants' motion to dismiss dated April 9, 1998.
— I —
The parties have stipulated to the following facts. In early 1998, by public advertising, notice and distribution of its Project Manual For Roofing and Associated Work, Thompson put the project out for public competitive bidding. Thompson hired an architectural and planning firm, The Lawrence Company, to assist it with the bidding process. Thompson's package for sealed bids called for separate prices on a base bid and four alternate bids. Bidders, however, were instructed not to include the cost of lead paint removal in their original bids, and that any additional cost for lead based paint removal would be addressed by Change Order.
The Project Manual included an Invitation to Bid which provided that "subject to the rights reserved to the Owner in paragraph 11 below, the contract shall be awarded to the lowest responsible qualified bidder."
Paragraph 11 of the Invitation to Bid provides as follows:
 The Owner shall have the right to reject any or all Bids and in particular to reject a Bid not accompanied by any required bid security or data required by the Bidding Documents or a Bid in any way incomplete or irregular. The Owner shall have the right to waive any informality or irregularity in any Bid received.
CT Page 5319
Thompson reserved the right to reject any or all bids. In addition, Thompson reserved the right "to accept Alternates in any order or combination . . . and to determine the low Bidder on the basis of the sum of the Base Bid and Alternates accepted."
Along with four other bidders Hartford Roofing timely submitted a sealed bid which complied with all the bidding and contract requirements. Shortly thereafter, on February 26, 1998, the five sealed bids were publicly opened, indicating that Hartford Roofing's bid was the lowest on the base bid as well as on the total bid, comprising the base bid plus four alternate bids. Defendant Silktown's base bid was second lowest being some $13,000 higher than that of Hartford Roofing.
In order to clarify certain information contained in the submitted bids, on March 10, 1998, Richard S. Lawrence of The Lawrence Associates, sent out a memorandum to the five bidders seeking such clarification and providing the following additional statement in paragraph 5:
 Owner has had Mystic Air Quality Consultants, Inc. take test samples on the existing paint around the facia and chimney where the Bidding Documents call for "scraping and re-painting". Enclosed is a copy of those results with their accompanying report. Please provide an amount to be added to your Base Bid for the necessary lead based paint abatement, containment, operations and disposal.
On March 16, 1998, Bruce M. Rauluatis, Silktown's Project Manager, wrote to the Town: "Silktown Roofing has the cost of the lead paint abatement and has propose [sic] the following changes: Silktown Roofing proposes a DEDUCT COST of $15,000.00 to perform the lead paint abatement. . . ." (Capitals in original.)
On March 16, 1998, Jason B. Woz, Hartford Roofing's Project Manager, wrote to the Town: "Alternate for lead abatement . . . $25,000." In addition, he clarified a portion of the Alternate Number 2 bid submitted on February 26, 1998, regarding walk paths, writing: "Clarification: Bid was for a three foot wide walkway. Specified Carlisle locking pads are two feet wide. Our original price of $29,500.00 is for a 4 foot wide walk. We believe that the other bidders price is based on only a 2 foot CT Page 5320 walk pad, as noted in the specification, and not the 3 foot wide that is noted in Detail 1/A-10. If two feet wide is acceptable, decrease this alternate by $14,750.00." (Emphasis in original.)
After the original bids were adjusted to include the cost of the lead paint abatement, Silktown's total bid, comprising the base bid, four alternate bids, and the lead paint abatement, became the lowest.
On March 17, 1998, Lawrence reported the following data to the Thompson Building Committee:
CONTRACTOR BASE BID B/B + 4 LEAD CLARIFY ALTERNATES PAINT WALKWAY
HARTFORD Roofing $604,000 $840,150 +$25,000 -$14,750
SILKTOWN Roofing $616,758 $853,937 -$15,000
Concerned about the lead paint abatement estimates submitted, Lawrence opined: "The cost quotations for the removal of the lead based paint are suspect now that all contractors know each others prices for the main portion of the project. In some cases we believe these do not reflect the actual cost and were modified to place their combined price in a more competitive position to the lowest bidders."
Lawrence then advised the building committee: "We suggest the Committee consider awarding the Project on the basis of the Bids opened on 2-26-98 and ask that Bidder to obtain for your consideration three lead paint removal contractor's bids, OR re-bid the entire project with the lead base paint included as part of the Base Bid."
On March 17, 1998, the building committee met to discuss the bids and voted "to accept the bid from Silktown Roofing; Silktown Roofing's bid to include their base bid, all four alternatives; and their cost adjustment for the removal of lead based paint as per their proposal dated 3/16/98; the total amount to be $838,937 for construction costs subject to local funding approval."
Thereafter, on March 19, 1998, Hartford Roofing sent a letter protesting the decision to award the contract to Silktown.
— II — CT Page 5321
Defendants' Motion to Dismiss, which was denied prior to the taking of evidence on April 14, 1998, was based in large part on the contention that as an unsuccessful bidder, plaintiff did not have standing to challenge the award to Silktown. This court found that the allegations made by plaintiff were sufficient under Connecticut law to confer standing on the plaintiff. After hearing the evidence, this court finds that the actions of the defendants so undermined the objective and integrity of the bidding process as to confer standing on the plaintiff in accordance with the exception carved out by our Supreme Court inArdamore Construction Co. v. Freedman, 191 Conn. 497, 504, 505
(1983) and Spiniello Construction Co. v. Manchester,189 Conn. 539 (1983)
— III —
Plaintiff claims that on February 26, 1998 when all the bids were opened, it was the lowest qualified bidder, both on the base bid as well as on the total bid comprising the base bid and the four alternative bids, which was the bid selected by the Town. It claims the Town violated the dictate of its own Addendum No. 1, when instead of accounting for any additional costs for lead based paint removal by post award change order, it-did not award the contract to plaintiff but invited additional bids for the lead based paint removal. Even more, plaintiff claims the Town violated the terms of its own bid documents and General Statutes § 10-287 (b) when after the bid opening on February 26, it permitted the four non-qualifying bidders, with knowledge of plaintiff's low bid, to adjust their bids, without expressly notifying all the bidders, including the plaintiff, that such a procedure would be followed. Plaintiff claims that a contract award to Silktown, based on its negative bid for lead paint removal, with the resulting new low bid should be enjoined because it gave Silktown a competitive advantage in violation of the statute and the Town's own bid documents.
Defendants conceded, at oral argument, some irregularities in the bid procedure, but maintain that the building committee acted in good faith to obtain the lowest bid, that all bidders were given the same opportunity to revise their bids and that the action of the building committee in accepting the revised Silktown bid was further justified because of the time constraints involved since this project was required to be funded by the state by June 30, 1998. Defendants further argue that CT Page 5322 plaintiff is not entitled to equitable relief because it comes to this action "without clean hands" since it "played the same game" by submitting a revised bid on the walkways.
— IV —
Contracts for school building construction receiving state assistance, such as the one in the present case, must comply with General Statutes § 10-287 (b), which provides in pertinent part:
 All orders and contracts for school building construction receiving state assistance under this chapter shall be awarded to the lowest responsible qualified bidder only after a public invitation to bid, which shall be advertised in a newspaper having circulation in the town in which construction is to take place. . . .
In order to prevail in this action, Hartford Roofing must prove that Thompson's conduct defeated "the very object and integrity of the competitive bidding process." SpinielloConstruction Co. v. Manchester, 189 Conn. 539, 544, 456 A.2d 1199
(1983). On the other hand, good faith on the part of Thompson will not necessarily save a bidding procedure which is sufficiently flawed. Where the possibility of partiality or fraud is present, or where the municipal action amounts to a fraud on the bidding statute, such action will be set aside even in the presence of good faith; there is no need to prove actual fraud or favoritism or collusion; the absence of corrupt motives does not preclude the judicial remedy. 10 McQuillin, Municipal Corporations (3d Ed. Rev.) § 29.83.
In Spiniello, our Supreme Court discussed competitive bidding in a case in which a municipality provided information to one bidder that had not been provided to other bidders. In ArdmareConstruction Co. v. Freedman, 191 Conn. 497, 505 (1983) the court in distinguishing that case from Spiniello pointed out that inSpiniello "parity of information no longer existed among the bidders as envisioned by the statute."
In Spiniello, three construction firms, including the plaintiff and Raymond, submitted separate bids on July 14, 1980. On contract #3 the plaintiff's bid ($268,450) was the lowest and Raymond's bid ($272,200) was next lowest. On contract #2 Raymond CT Page 5323 submitted the lowest bid ($397,860) and the plaintiff's bid ($399,160) was the next lowest. Unknown to the other bidders, a representative of Raymond contacted officials of Manchester on July 11, 1980, and inquired whether, in addition to the separate bids, it could file a reduced combined bid conditioned on both contracts being awarded to Raymond. The Manchester officials advised Raymond that it could submit such a proposal in addition to the separate bids. Despite the bid instructions which required written notice to all prospective bidders of interpretations of the bidding documents, no such notice was mailed to the plaintiff or to others.
The Spiniello court stated the rule that "[c]ourts will intervene to prevent the [municipality's] exercise of [the] discretion to deny a bid . . . only where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials."Spiniello Construction Co. v. Manchester, supra, 189 Conn. 544. Applying this rule to the facts of that case, the Spiniello court reasoned: "No written notice of the interpretation of a bidding instruction was mailed to prospective bidders, including the plaintiff. By permitting Raymond to submit a conditional bid when other bidders were not afforded the same opportunity, Manchester precluded the other bidders from competing on equal terms. It defeated the object and integrity of the competitive bidding by unintentionally exhibiting favoritism to Raymond. While Manchester's actions were taken in good faith in an effort to obtain the best contract for its residents, judicial relief is warranted where municipal action amounts to an erosion on actions were taken in good faith in an effort to obtain the best contract for its residents, judicial relief is warranted where municipal action amounts to an erosion on the integrity of the bidding statute. 10 McQuillin, supra, § 29.83." Id., 544-45.
By contrast, in Ardamore, where injunctive relief was overturned, the court found that elements traditionally thought to undermine the competitive bidding process were noticeably absent.
The general rule is that bids cannot be changed in substance after presentation and the lapse of the designated time for opening the bids. 10 McQuillin, supra, § 29.68 Similarly, a municipality's attempt to solicit additional commitments from bidders after the opening of bids violates the orderly process of CT Page 5324 secret, competitive bidding, nullifying the entire bidding process. Id., § 29.70. In CFL, Inc. v. West Haven, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 701763 (June 7, 1991, O'Neill, J.) (4 Conn. L. Rptr. 188) (6 C.S.C.R. 644), Judge O'Neill ruled that a system which accepts after the fact changes to established bidding procedures undermines the integrity of the entire bidding process.
— V —
In the present case, the uncontroverted testimony of John McConville, the president of Silktown, indicates that Bruce M. Rauluatis, Silktown's Project Manager, contacted Lawrence, the Town's agent, by telephone on March 16, 1998, just prior to submitting Silktown's bid. It is clear that Silktown was concerned about whether it could combine cost savings from other parts of the project such as masonry work, material costs, warranties, and equipment rental with the cost of the lead paint abatement, because combining the cost savings would result in a reduction in the bid rather than an additional cost for the lead paint abatement work. Silktown asked Lawrence whether it could combine cost savings from other parts of the project with the cost of the lead paint abatement and Lawrence orally informed Silktown that it could combine the cost savings from other parts of the project with the cost of the lead paint abatement. Immediately thereafter, Silktown submitted a bid proposing a reduction in cost of $15,000 to perform the lead paint abatement. There was no evidence that the other bidders, particularly the plaintiff, were ever informed of the possibility of putting lower costs from other portions of the contract into the lead paint abatement number. Plaintiff's president specifically denied that plaintiff had been so informed.
Because the information available to the successful bidder, Silktown, was different from the information available to plaintiff and all other bidders, it must be concluded that the object and integrity of the competitive bidding process was defeated. Spiniello Construction Co. v. Manchester, supra,189 Conn. 544-45.
Furthermore, the Project Manual expressly precludes bid modifications, providing: "A Bid may not be modified, withdrawn or canceled by the Bidder during the stipulated time period following the time and the date designated for the receipt of Bids, and each Bidder so agrees in submitting a Bid." Silktown CT Page 5325 effectively modified its bid by combining cost savings from parts of the project that it had previously bid on such as the masonry work, material costs, warranties, and equipment rental with the cost of the lead paint abatement. Even though it may have been acting in good faith, the building committee violated its own bidding instructions by accepting a modified bid from Silktown. There must be some balance between the laudable desire of a building committee to obtain the lowest bid possible in a timely fashion with such violations of fairness in the bidding process that if permitted, would discourage the benefits of competitive bidding in the future. That balance was clearly tipped by the building committee in this case.
Unlike Silktown's bid modification, Hartford Roofing responded to Lawrence's memorandum of March 10, 1998, by clarifying the bid submitted to complete the walk paths. Credible, uncontroverted testimony and documents demonstrated that Hartford Roofing merely offered to decrease cost of the walk paths if fewer two foot wide Carlisle locking pads were required where three foot wide pads had been specified. Hartford Roofing's response was based on data indicating that other bidders had submitted prices based on a two foot wide walk, while Hartford Roofing submitted prices based on a three foot wide walk in order to comply with the specifications in Detail 1/A-10. Thus, Hartford Roofing wrote: "If two feet wide is acceptable, decrease this alternate by $14,750.00." This did not amount to an attempt to lower its own base bid for the sole purpose of maintaining itself in the status of low bidder, or catapulting itself into such status.
— VI —
At trial, there was considerable testimony on "unbalanced bids." The Project Manual contains a provision regarding unbalanced bids which provides in pertiment part:
 Proposals in which the prices obviously are unbalanced may be rejected. Unbalanced prices shall be interpreted to mean that any item in the proposal or any price for an Alternate Bid in the proposal is such that it is unreasonable for that item or Alternate Bid when considered by itself and not considered in connection with the Bid submitted on any other item or items or Alternate Bids.
CT Page 5326
Under this definition, Silktown's lead paint abatement bid would appear to be unbalanced, as it is unreasonable for the lead paint abatement to result in a reduction of $15,000.00 when considered by itself and not in connection with the bid submitted on any other item or items. Nevertheless, because it has already been found that the object and integrity of the competitive bidding process was defeated in this case and that Thompson violated its own bidding instructions by accepting a modified bid from Silktown, it is unnecessary to address the question whether Thompson violated its own bidding instructions by accepting an unbalanced bid.
It is found that because the bidding process was materially flawed and the award of the re-roofing contract to Silktown Roofing, Inc. under the present circumstances would be unlawful, that the plaintiff would suffer irreparable damage by such an award and would not have an adequate remedy at law, and is otherwise entitled to equitable relief.
Plaintiff has claimed in addition to injunctive relief a "mandatory injunction" directing the Town and the Board of Education to enter into a contract with plaintiff based on its bid of February 26, 1998, but this court has no power to do so, particularly in view of the Town's reserved power to reject all bids. John J. Brennan Construction Corp. Inc. v. Shelton,187 Conn. 695, 702 (1982).
Defendants, Town of Thompson and the Thompson Board of Education are enjoined from awarding the re-roofing contract to Silktown Roofing, Inc., or any bidder other than Hartford Roofing Co., Inc., until a new bidding process under General Statutes § 10-287 (b) is conducted.
Jerry Wagner Judge Trial Referee