[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO DISMISS
The plaintiff, Connecticut Associated Builders and Contractors ("ABC/CT") is a non-profit corporation which represents 150 firms that are employed in the construction industry. Its members are contractors and related firms who operate and employ labor without regard to union or non-union status. Plaintiff, Electrical Mechanical Contractors, Inc. ("EMC") is a corporation which hires non-union labor and performs mechanical, sprinkler and electrical contracting services.
Defendant State of Connecticut Commission on Hospitals and Health Care ("CHHC") is a State agency operating under the authority of General Statutes § 19a-145 et seq. Defendant St. Francis Hospital Medical Center ("St. Francis") is a health care facility as defined in General Statutes § 19a-145.
On November 30, 1992 St. Francis and its affiliated institution Mount sinai Hospital ("Mount Sinai"), filed a Certificate of Need ("CON") application with CHHC in order to obtain approval for the construction of a Partial Replacement Facility and the renovation of certain buildings at St. Francis, as well as certain patient care services between St. Francis and Mount Sinai.
As required by statute, the project was approved pursuant to General Statutes Sections 19a-154 and 155 by the CHHC, per Certificate of Need application filed by St. Francis and an Agreed Settlement executed by CHHC and St. Francis on May 10, 1993. The Agreed Settlement was adopted by CHCC as the agency's finding and order for the subject application by St. Francis. Paragraph 21 of the Agreed Settlement provides:
"21. The Commission and Saint Francis Hospital and Medical Center share the objective of implementing the Partial Replacement Facility CON project's new construction and renovations in the most cost effective manner possible. The Hospital represents that it plans to employ a phased guaranteed maximum price ("GMP") development approach that establishes the "Cost of the Work" through a competitive bid process prior to creating a guaranteed maximum price for the CON project. The Commission recognizes that in order to obtain the most cost effective project price, the Hospital will bid the CON project in three parts and obtain a GMP for each part. Accordingly, the Hospital shall manage the CT Page 7745 estimating and bidding process for the CON project as follows:
 a) All aspects of the new construction and renovations for the CON project will be competitively bid. The intent of the bid process is to identify and engage the lowest qualified bidder, provided that no performance issues are anticipated.
 b) In order to eliminate any financial incentive for the Construction Manager to present other than the lowest reasonable construction costs for the Hospital, the Construction Manager's fee will be fixed prior to the time that the Guaranteed Maximum Price is established."
The Project is being coordinated by a construction manager, Gilbane Building Company, which is working as an agent for St. Francis. The Project has been let out to bid in a series of contracts for the various trades (e.g. an electrical contractor, a mechanical contractor, a sprinkler contractor, a site contractor, a painting contractor, and so forth. However, EMC personnel and several ABC/CT members were told that inasmuch as they were not union contractors they would not be allowed to either pick up contract documents or submit a bid for this work unless they signed an agreement to use exclusively union labor and submit to other collective bargaining conditions for this project.
The plaintiffs claim as follows:
1. That by putting the subject project out to bid only to union contractors St. Francis has violated the express requirements of CHCC's order (as set forth above).
2. That St. Francis is violating the terms and conditions issued by CHEFA as to the tax-exempt bonding for the Project.
3. That CHCC has enforcement powers, including but not limited to the provisions of General Statutes § 19a-159 through which it can enforce its findings and orders, but has failed to correct the illegal bidding.
4. That the plaintiffs will suffer irreparable harm if CT Page 7746 the illegal acts of the defendants are allowed to continue.
5. That the acts and omissions of CHCC have violated Article 1, Section 1 and Article 1, Section 20 of the Connecticut Constitution.
6. That the acts of both defendants violate the Connecticut Anti-trust Act, General Statutes § 35-25 et seq.
The plaintiffs request that the court do the following:
1. Issue a declaratory judgment that the exclusion of merit shop contractors from bidding and contracting for the Partial Replacement Facility at St. Francis Hospital Medical Center on any basis or grounds other than those set forth in Connecticut General Statutes Section 4a-59 in regard to the bidder's qualifications is illegal for one or more of the grounds set forth in the Verified Complaint;
2. Temporarily and permanently enjoin St. Francis Hospital Medical Center from awarding or executing contracts for or proceeding with any construction on the Partial Replacement Facility Project, as approved by the Agreed Settlement, CHHC Docket No. 92-553, unless and until EMC, ABC/CT's member firms, and all other merit shop bidders are permitted to bid such contracts without the consideration of the use of union labor, or other collective bargaining agreement requirements, as any factor whatsoever in determining their responsibility or qualifications as bidders;
3. Issue such orders of mandamus directed to CHHC as are necessary to effectuate the foregoing orders of this Court, and to command CHHC not to permit the bidding, contract award, or construction of the Partial Replacement Facility Project unless and until EMC, ABC/CT's member firms, and all other merit shop bidders are permitted to bid the construction contracts for the Project without the consideration of the use of union labor or other collective bargaining agreement requirements, as any factor whatsoever in determining their responsibility or qualifications as bidders.
I. Defendant CHHC moves to dismiss the complaint for two reasons:
First: That the plaintiffs lack standing to sue CT Page 7747 defendant commission because they do not have a legally protected interest.
Second: That their complaint is barred by sovereign immunity.
The court holds that the plaintiffs lack standing to sue CHHC.
The test for standing in general is that the plaintiff must demonstrate a legal interest in the subject matter of the controversy which has been directly harmed by the defendant.Connecticut Business Industry Ass'n. v. CHHC, 218 Conn. 335,345-46, 589 A.2d 356 (1991). The plaintiffs cannot establish that they had a specific, personal and legal interest in the Commission's decision in Docket No. 92-553 in the first instance. Even where a competitor health care entity sought standing to bring an action against a health care entity which had received a certificate of need from the Commission, the Connecticut Supreme Court held that a speculative loss of revenues is "insufficient to confer standing and establish aggrievement" New England Rehabilitation Hospital of Hartford,Inc. v. CHHC, 226 Conn. 105, 127.
In the instant case, the plaintiffs are not even competitors of the entity (St. Francis) which has received a benefit as a result of Commission action. They are competitors of those who have bid on a project belonging to St. Francis. "Standing is that doctrine which affords a party the right to request an adjudication of issues which affect him and his right in particular." Nania v. Borges,41 Conn. Sup. 90, 95, 55 A.2d 781, 784 (1988). Plaintiffs have not set forth what rights they have with regard to the Commission.
Plaintiffs allege that the Commission has a "variety of enforcement powers, including but not limited to Conn. Gen. Stat. § 19-159 through which it can enforce its findings and orders. However, the Commission has determined that there has been no violation of the Agreed Settlement, and therefore will not exercise its authority under Conn. Gen. Stat. § 19a-159. The plaintiffs have failed to state in their complaint the legal interest that they have in the Commission's decision which is sufficient to give them standing to bring an action against the Commission. In their brief, they talk about CHHC's statutory duty to keep health cases to a minimum. That CT Page 7748 is an interest which the general public may have. However, a party bringing suit must demonstrate a legal interest in the subject matter of a controversy that can be distinguished from the interest of the general public. Connecticut Business Industry Assn., Inc. v. CHHC, supra.
Furthermore, plaintiffs have not alleged any credible injury which they have suffered as a direct result of any Commission action or inaction. Their claim as to the defendant Commission is indirect and speculative at best.
The only action which the Commission has taken which has been raised in the plaintiffs' complaint, is that the Commission issued an order, as part of the Agreed Settlement in Docket No. 92-553 to St. Francis. Not only have the plaintiffs not brought this action to court as an administrative appeal, they do not allege that the Commission did anything illegal or improper by resolving the contested case with St. Francis by entering into an agreed settlement which required competitive bidding in order to achieve a cost-effective result. The harm that they claim is a result of the way in which St. Francis implemented paragraph 21 of the Agreed Settlement in Docket No. 92-553. As potential competitors for the business this project will generate, the plaintiffs argue that they have been harmed by the potential loss of revenue and loss of experience they might have had. However, any loss of this type is a result of the manner in which St. Francis conducts the bidding and awards the contracts for this project.
The plaintiffs have not articulated any law which the Commission has violated. They cite Spinello Construction Co.v. Manchester, 189 Conn. 539, 456 A.2d 1199 (1983), UnisysCorp. v. Department of Labor, 220 Conn. 689, 600 A.2d 1019
(1991) and Drywall Associates, et al v. State of ConnecticutDepartment of Education and City of Danbury, No. 704232 Superior Court for J.D. Hartford/New Britain at Hartford (O'Neill, J.) (July 1, 1993), as authority for the position that exclusion of their members from the bidding process on the St. Francis project shows favoritism and undermines the very object and integrity of the competitive bidding process as expressly required by state law for this project.
Aside from the fact that the Commission did not exclude anyone from the bidding process, plaintiffs' reliance on these CT Page 7749 cases is misplaced. All of the contracts involved in these cases were government contracts, involving state agencies or municipalities. St. Francis Hospital and Medical Center is not a division of the federal, state or local government.
The contracts involved in Spinello Construction Co. v.Manchester were public works contracts governed by the town charter which had a specific provision with regard to competitive bidding. 189 Conn. at 540. In Unisys Corporationv. Department of Labor, the contract involved the spending of State funds for computer software and services which contract was administered by the Department of Administrative Services which is bound by the competitive bidding language in Conn. Gen. Stat. § 4a-57. 220 Conn. at 690-91. Similarly in DrywallAssociates et al v. State of Connecticut Department ofEducation City of Danbury, the project was designed to be funded in whole or in part by a State of Connecticut grant and administered by the State of Connecticut Department of Education governed by Conn. Gen. Stat § 10-287. The conflict in Drywall Associates involved a City of Danbury ordinance which gave preference to the Danbury labor market, Memorandum of Decision, Docket No. 704232, p. 4-5, and the requirement that state funds and grants administered by the State Department of Education be bid pursuant to Conn. Gen. Stat. § 10-287 (b). Id. at 9.
All three cases involved the expenditure of funds by a town, city or the State of Connecticut. Plaintiffs cite no statute which requires regulated entities such as hospitals to be governed by specific competitive bidding requirements.
The court further finds that this case should be dismissed as to CHHC because their complaint is barred by sovereign immunity. "The modern purpose of the sovereign immunity doctrine rests . . . on the purpose of preventing serious interference with governmental functions and the imposition of enormous fiscal burdens on the State by subjecting its government functions to private litigation."Herzig v. Horrigan, 34 Conn. App. 816, 819. The bar of actions against the State is not absolute, however, and has been modified by both statutes and judicial decisions. Unconstitutional or unauthorized acts of the State are not protected by the doctrine of sovereign immunity. Also, the State may consent to be sued in certain cases by appropriate legislation waiving its sovereign immunity. id. The CT Page 7750 plaintiffs have alleged that CHHA has violated their constitutional rights. Apparently they are alleging breaches of the statutory obligations of the Commissioner that have resulted in violations of their constitutional rights. However, they have failed to allege facts which can establish that the Commission owed them a duty to act. Therefore, the Commission cannot have violated the law by failing to act at their insistence. The court concludes that the plaintiffs have failed to show any violation of their constitutional rights. Therefore, their complaint is barred by sovereign immunity.
II. Defendant St. Francis moves to dismiss the complaint for two reasons:
1. That the plaintiffs lack standing to sue St. Francis.
2. That the substantive State law claims asserted by the plaintiffs are preempted by federal law.
The court holds that the plaintiffs lack standing to sue St. Francis Hospital.
First, private parties have no standing to bring an action seeking to enforce a CHHC order. The complaint alleges that St. Francis is violating the terms of the Agreed Settlement by which CHHC approved the Project. But the sole power to initiate a legal action to enforce a CHHC order rests with the CHHC itself, or with the Attorney general, not with the plaintiffs. General Statutes § 19a-159 provides:
"The superior court on application of the Commission or the attorney General, may enforce, by appropriate decree or process of this chapter or any act or any order of the Commission rendered in pursuance of any statutory provision."
The Connecticut Supreme Court has held that there is generally no implied private cause of action for violation of a regulatory statute. See Middletown v. Hartford ElectricLight Co., 192 Conn. 591 (1984). In Middletown, a city attempted to bring an action against a utility to force that utility to seek regulatory permits before burning a certain type of fuel that the city alleged could be hazardous. The trial court dismissed the case, holding that the city did not have standing to enforce the statutory environmental CT Page 7751 permitting scheme. The Supreme Court affirmed, stating that the legislature did not intend "to create private causes of action to supplement the pervasive regulatory powers" of the agency. Id. at 596. The Court also noted that "[w]hen the legislature has authorized supplementary private causes of action, it has generally done so expressly." (citing Conn. Gen. Stat. §§ 22a-16 (Environmental Protection Act) and 42-110g
(Unfair Trade Practices Act).
More recently, the Appellate Court also concluded that there is no private right of action for alleged violations of a regulatory scheme. Holly Hill Holdings v. Lowman,30 Conn. App. 204, aff'd on other grounds, 226 Conn. 748 (1993). In that case the plaintiff sought to foreclose a mortgage held on property owned by the defendants. The defendants filed special defenses and counterclaims alleging that the plaintiff had not complied with certain environmental reporting and disclosure requirements imposed by agency regulation. The Appellate Court held that the agency regulations did not create a private right of action.
The Holly Hill Holdings court, like the Middletown court, stated that "when the legislature intended to create a private right of action it did so, and it did so expressly." Id., 30 Conn. app. at 220. Moreover, the statute at issue in HollyHill Holdings provided that the Attorney General could bring an action to enforce the statute and the Court noted that "[t]he right to maintain a private right of action is conspicuously absent from this provision." Id. at 221.
In this case, General Statutes § 19a-159 provides only that the CHHC and the Attorney General may bring an action for enforcement of a CHHC order. The right to maintain a private right of action is conspicuously absent from this provision. There simply is no private right of action for violation of a CHHC order. Accordingly, neither of the plaintiffs have standing to bring an action against St. Francis to enjoin alleged "violations" of the Agreed Settlement between St. Francis and CHHC. This action therefore should be dismissed for lack of subject matter jurisdiction.
Second, this case does not involve any claim of public bidder standing. The plaintiffs cited three cases in which disappointed bidders were allowed to maintain actions against governmental entities for alleged violation of various public CT Page 7752 bidding law. Spinello Construction Co. v. Manchester, supra;Unisys Corp. v. Department of Labor, supra; DrywallAssociates, et al v. State of Connecticut Department ofEducation City of Danbury, supra. As stated above, these cases involved statutes that regulated the expenditure of public funds. Such is not the case here.
The plaintiffs claim that the St. Francis Project is a public funded project because it is to be partly funded through the sale of tax exempt bonds issued by the Connecticut Health and Educational Facilities Authority ("CHEFA"). However, General Statutes § 10a-187 provides:
 "Bonds issued under the provisions of this chapter shall not be deemed to constitute a debt or liability of the state or of any political subdivision thereof other than the authority or a pledge of the full faith and credit of the state or of any such political subdivision other than the authority . . . ."
CHEFA's enabling legislation explicitly states that construction projects funded through the sale of bonds by CHEFA are not subject to the requirements of publicly funded projects. General Statutes § 10a-196 provides: "[i]n the construction and acquisition of a project pursuant hereto the authority need not comply with the requirements of chapter 50. (transferred to Chapter 58 — addressing procedures for publicly funded projects).
Third, for another reason the court holds that ABC/CT has no standing to bring this action. ABC/CT asserts that it is filing this action on behalf of its individual members. The Supreme Court has held that an association has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Connecticut Association of HealthCare Facilities v. Worrell, 199 Conn. 609, 616. The individual members as private parties have no standing to assert a private right of action seeking to enforce an order of CHHC. Also, no disappointed bidder challenge may be made because this is not a public project. Furthermore, ABC/CT cannot assert representational standing because, without the CT Page 7753 participation of its members, it is unable to prove the elements of a disappointed bidder claim. Even if this case involved public sector bidding (which it does not) it would be necessary for individual members of ABC/CT to participate as parties.
The court further holds that it does not have jurisdiction to decide whether the substantive state law claims asserted by the plaintiffs are preempted by federal law.
There has been much discussion by the parties as to whether the plaintiffs' claims are preempted by the National Labor Relations Act ("NLRA"). The court does not believe it has jurisdiction to decide that issue. The plaintiffs claim that the Community Teamwork Agreement and the subcontracting clauses contained therein are invalid under section 8 of the NLRA. "When an activity is arguably subject to § 7 or § 8 of the Act, the state as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted . . . .
"To require the States to yield to the primary jurisdiction of the National Board does not ensure Board adjudication of the status of a disputed activity. If the Board decides, subject to appropriate federal judicial review, that conduct is protected by § 7 or prohibited by § 8 then the matter is at an end, and the States are ousted of all jurisdiction. Or, the Board may decide that an activity is neither protected nor prohibited, and thereby raise the question whether such activity may be regulated by the States."San Diego Building Trades Council, Millmen's Union, Local2020, Building Material and Dump Drivers, Local 36, v. Garmon,395 U.S. 236.
Accordingly, the Motion to Dismiss as to both defendants is granted.
Allen, State Trial Referee CT Page 7754