ARDMARE CONSTRUCTION COMPANY, INC. *v.* ELISHA C.
FREEDMAN, COMMISSIONER OF ADMINISTRATIVE
SERVICES, ET AL.
(12124)

SPEZIALE, C. J., PETERS, HEALEY, PARSKEY and SHEA, JS.

Argued October 4—decision released November 15, 1983

*John Yacavone,* assistant attorney general, with
whom were *Thomas Yasensky,* assistant attorney
general, *Steven G. Berg,* and, on the brief, *Joseph
I. Lieberman,* attorney general, for the appellants
(defendants).

*Thomas W. Bucci,* for the appellee (plaintiff).

SHEA, J. In a judgment rendered from the bench,[1]
the trial judge granted the plaintiff's request for man-
damus, and ordered the commissioner of administrative
services to award a contract for the repair of walls and
walks at the community correctional center in Bridge-

---

[1] A memorandum of decision was filed on May 13, 1983.

port to the plaintiff. The defendants[2] have appealed maintaining that an order of mandamus was improper because (1) the commissioner performs a discretionary duty when awarding a public work contract; (2) the plaintiff had an adequate remedy at law; and (3) the plaintiff's bid was incomplete, requiring the commissioner to reject the bid pursuant to General Statutes § 4-137e (c).[3] We do not reach any of these issues but conclude that the plaintiff lacked standing to bring this action.[4]

The facts are not disputed. The commissioner solicited bids for the project pursuant to General Statutes § 4-137a.[5] The plaintiff and fourteen other construc-

[2] The A. Petrucci Construction Company is a codefendant and has joined the commissioner in this appeal.

[3] General Statutes § 4-137e (c) provides in part: "General bids shall be for the complete work as specified and shall include the names of any subcontractors to be used by the general bidder and the dollar amounts of their subcontracts, and the general contractor shall be selected on the basis of such general bids. Every general bid which is on a form not completely filled in, or which is incomplete, conditional or obscure, or which contains any addition not called for, shall be invalid; and the awarding authority shall reject every such general bid. No such general bid shall be rejected because of the failure to submit prices for, or information relating to, any item or items for which no specific space is provided in the general bid form furnished by the awarding authority, but this sentence shall not be applicable to any failure to furnish prices or information required by this section to be furnished in the above . . . ."

[4] Although neither party expressly raised this issue, the cases cited in the defendants' brief did bring the issue to our attention and it was discussed during oral argument. Generally, this court considers issues not raised or briefed as abandoned. See *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 366, 362 A.2d 519 (1975). When the issue involves either the trial court's or this court's jurisdiction, however, we have no alternative but to address the issue. *Willard* v. *West Hartford,* 135 Conn. 303, 306, 63 A.2d 847 (1949); *Foss* v. *Foss,* 105 Conn. 502, 512, 136 A. 98 (1927); cf. *State* v. *Curcio,* 191 Conn. 27, 30, 463 A.2d 566 (1983).

[5] "[General Statutes] Sec. 4-137a. BIDDING FOR PUBLIC BUILDING CONTRACTS. Every contract for the construction, reconstruction, alteration, remodeling, repair or demolition of any public building for work by the state, which is estimated to cost more than two hundred fifty thousand dollars

tion companies submitted bids on forms supplied by the department of administrative services.[6] On January 12, 1983, a public bid opening was held where it was announced that the plaintiff had submitted the lowest bid.

On January 17, 1983, the department of administrative services rejected the plaintiff's bid because the signature of the president, who purported to act as the agent for the company, had been impressed on the bidding form with a rubber stamp. The administrative services department had in the past maintained the practice of rejecting all bids that did not have an

shall be awarded to the lowest responsible and qualified general bidder on the basis of competitive bids in accordance with the procedures set forth in this chapter, after the commissioner of administrative services or, in the case of a contract for work on the state capitol building, the joint committee on legislative management of the general assembly, has invited such bids by advertisements inserted at least once in one or more newspapers having a circulation in each county in the state. Such award shall be made within sixty days after the opening of such bids. If the general bidder selected as the general contractor fails to perform his agreement to execute a contract in accordance with the terms of his general bid and furnish a performance bond and also a labor and materials or payment bond to the amount specified in Item 1 of the form for general bid, an award shall be made to the next lowest responsible and qualified general bidder. If the lowest responsible and qualified bidder's price submitted is in excess of funds available to make an award, the commissioner of administrative services or the joint committee on legislative management, as the case may be, is empowered to negotiate with such bidder and award the contract on the basis of the funds available, without change in the contract specifications, plans and other requirements. If the award of a contract on said basis is refused by such bidder, the commissioner of administrative services or the joint committee on legislative management, as the case may be, may, if he or it deems it advisable, negotiate with other contractors who submitted bids in ascending order of bid prices without change in the contract, specifications, plans and other requirements. In the event of negotiation with general bidders as provided herein, the general bidder involved may negotiate with subcontractors on the same basis, provided such general bidder shall negotiate only with subcontractors named on his general bid form."

[6] General Statutes § 4-137e requires the awarding authority to supply forms for the bids.

original handwritten signature.[7] According to the chief bidding officer, the department interpreted General Statutes § 4-137e (b) E[8] to require handwritten signatures. He conceded, however, that the department had not promulgated any regulation concerning its interpretation of the statute, and that no bidders had been notified of the requirement that bids be signed by hand.

The commissioner eventually awarded the contract to the defendant A. Petrucci Construction Company, the next lowest bidder. The plaintiff sought a temporary restraining order against the construction company as well as the commissioner, which was granted on March 11, 1983. There has been no work performed on the project since that order was issued.

I

In *Perkins* v. *Lukens Steel Co.*, 310 U.S. 113, 125–30, 60 S. Ct. 869, 84 L. Ed. 1108 (1940), it was held that prospective bidders had no standing to challenge an administrative interpretation of a public contract law because the competitive bidding statutes were enacted solely for the protection of the public and conferred no enforceable rights upon those seeking to do business with the government. "Courts should not, where Congress has not done so, subject purchasing agencies of

---

[7] At trial, the commissioner's witness testified that only a handwritten signature would be an acceptable signature. The defendant now adopts the position that either an original handwritten signature or an authorized facsimile signature are permissible methods of signing the bidding form.

[8] General Statutes § 4-137e (b) E is set out as follows:

"E. The undersigned agrees that, if he is selected as general contractor, he will, within five days, Saturdays, Sundays and legal holidays excluded, after presentation thereof by the awarding authority, execute a contract in accordance with the terms of this general bid.

Date . . . .                              . . . . (Name of General Bidder)
                                   By . . . . (Title) . . . .
                                   . . . . (Business Address).
                                   . . . . (City and State)."

Government to the delays necessarily incident to judicial scrutiny at the instance of potential sellers, which would be contrary to traditional governmental practice and would create a new concept of judicial controversies." Id., 130. Although the delay occasioned by this litigation has been greatly curtailed by our granting a motion for an expedited appeal, a period of more than six months has elapsed since this action was brought during which needed repair work upon a state facility has been stalled and may now have to be performed under conditions different from those contemplated when bids were submitted. This court has consistently followed the view that an unsuccessful bidder has no standing to challenge the award of a public contract. *Joseph Rugo, Inc.* v. *Henson,* 148 Conn. 430, 171 A.2d 409 (1961); *Austin* v. *Housing Authority,* 143 Conn. 338, 122 A.2d 399 (1956); 10 McQuillin, Municipal Corporations (3d Ed. Rev.) § 29.77. Recently, in *Spiniello Construction Co.* v. *Manchester,* 189 Conn. 539, 456 A.2d 1199 (1983), we held that only "where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials," does an unsuccessful bidder have standing to challenge the award. Id., 544.

A

"Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." *Hiland* v. *Ives,* 28 Conn. Sup. 243, 245, 257 A.2d 822 (1966).

This court has declared that "[a] bid, even the lowest responsible one, submitted in response to an invitation

for bids is only an offer which, until accepted by the municipality, does not give rise to a contract between the parties." *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 702, 448 A.2d 180 (1982), citing *Joseph Rugo, Inc.* v. *Henson,* 190 F. Sup. 281 (D. Conn. 1960); see also *Spiniello Construction Co.* v. *Manchester,* supra; *Joseph Rugo, Inc.* v. *Henson,* 148 Conn. 430, 171 A.2d 409 (1961); *Austin* v. *Housing Authority,* supra; 10 McQuillin, Municipal Corporations (3d Ed. Rev.) § 29.80. An unsuccessful bidder, therefore, has no legal or equitable right in the contract. Not unlike any other person whose offer has been rejected, the disappointed bidder has no right to judicial intervention.[9] See *Perkins* v. *Lukens Steel Co.,* supra, 129; *Austin* v. *Housing Authority,* supra, 349.

Absent any impairment of a private right, judicial review may be obtained only when authorized by statute. In the federal arena, a disappointed bidder has standing under the Administrative Procedures Act, 5 U.S.C. § 702, which provides, "[a] person suffering legal wrong because of agency action, *or adversely affected or aggrieved by agency action* within the meaning of a relevant statute, is entitled to judicial review thereof." (Emphasis added.) See *B. K. Instrument, Inc.* v. *United States,* 715 F.2d 713 (2d Cir. 1983); *Airco, Inc.* v. *Energy Research & Development Administration,* 528 F.2d 1294 (7th Cir. 1975) (per curiam); *Armstrong & Armstrong, Inc.* v. *United States,* 514 F.2d 402 (9th Cir. 1975) (per curiam); *Hayes International Corporation* v. *McLucas,* 509 F.2d 247 (5th Cir.), cert. denied, 423 U.S. 864, 96 S. Ct. 123, 46 L. Ed. 2d 92 (1975); *William F. Wilke, Inc.* v. *Department of the Army,* 485

---

[9] The announcement that the plaintiff had submitted the lowest bid did not amount to acceptance. Acceptance occurs only after it is determined that the bid conforms to the statutory requirements, and the bidder is "competent to perform the work." See General Statutes § 4-137 (a) et seq.

F.2d 180 (4th Cir. 1973); *Merriam* v. *Kunzig,* 476 F.2d 1233 (3d Cir.), cert. denied, 414 U.S. 911, 94 S. Ct. 233, 38 L. Ed. 2d 149 (1973); *Scanwell Laboratories, Inc.* v. *Shaffer,* 424 F.2d 859 (D.C. Cir. 1970).[10] The Connecticut counterpart to § 702, however, is much more limited in scope. It provides that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal . . . ." General Statutes § 4-183 (a). A party seeking review of a state agency's action, therefore, must establish more than aggrievement (injury in fact); he must establish that the injury resulted from a final decision in a contested case.[11] See, e.g., *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 469–72, 378 A.2d 547 (1977) (commission meeting not a hearing within purview of General Statutes § 4-166 [2]; therefore not a contested case); *Old Rock Road Corporation* v. *Commission on Special Revenue,* 173 Conn. 384, 387–88, 377 A.2d 1119 (1977) (provisional grant of racing license not a final decision). An agency decision to reject a bid or to award a contract has none of the attributes of a formal hearing, nor is a formal hearing required by law. For this reason, the agency's decision does not involve a contested case, and

---

[10] The *Scanwell* decision and its progeny have removed all obstacles to judicial review of a federal agency's decision to award a public contract. One commentator has pointed out that the effect of that decision is to impose extraordinary delay in the performance and completion of the contract. See Pierson, "Standing to Seek Judicial Review of Government Contract Awards: Its Origins, Rationale and Effect on the Procurement Process," 12 B.C. Ind. & Com. L. Rev. 1, 24–31 (1970).

[11] General Statutes § 4-166 (2) defines a contested case as "a proceeding, including but not restricted to rate-making, price fixing, and licensing, in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for hearing or in which a hearing is in fact held, but does not include hearings referred to in section 4-168." See *Rybinski* v. *State Employees' Retirement Commission,* 173 Conn. 462, 469–72, 378 A.2d 547 (1977).

the disappointed bidder cannot assert standing under § 4-183 of the Administrative Procedure Act. See *Rybinski* v. *State Employees' Retirement Commission,* supra.

Nor does the competitive bidding statute provide the disappointed bidder with standing. This court has frequently declared "[m]unicipal competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit the taxpayers, not the bidders." *John J. Brennan Construction Corporation, Inc.* v. *Shelton,* 187 Conn. 695, 702, 448 A.2d 180 (1982); see also *Joseph Rugo, Inc.* v. *Henson,* 148 Conn. 430, 435, 171 A.2d 409 (1961); *Austin* v. *Housing Authority,* supra, 349.

B

In *Spiniello Construction Co.* v. *Manchester,* 189 Conn. 539, 456 A.2d 1199 (1983), we recognized that our prior decisions had the effect of preventing judicial review of potentially meritorious claims concerning the implementation and execution of competitive bidding statutes. We also acknowledged the fact that the group most benefited by the statute—the public—had no effective means of protecting their interests. We substantially adopted the position in *Scanwell* that "[t]he public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a 'private attorney general.' " *Scanwell Laboratories, Inc.* v. *Shaffer,* supra, 864; see generally Davis, Administrative Law Treatise (2d Ed.) §§ 24:2, 24:3. Thus, we held that where fraud, corruption or acts undermining the objective and integrity of the bidding

process existed, an unsuccessful bidder did have standing under the public bidding statute.[12] We limited the scope of our holding in order to strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the commencement and completion of government projects to the detriment of the public.

## C

We are unable to agree with the trial court that the commissioner's actions so undermined the competitive bidding process as to fall within the exception recognized in *Spiniello*. There was no allegation of fraud or favoritism, nor was either proven.[13] The plaintiff attempted to establish only that the practice was so arbitrary as to undermine the bidding statute. This case, however, involves none of the factors we considered significant in *Spiniello*. There, the municipality had imparted information to one bidder that it had not provided other bidders. See *Spiniello Construction Co.* v. *Manchester,* supra, 542. Thus, parity of information no longer existed among the bidders as envisioned by the statute. In this case, however, the commissioner had not informed any bidder of its requirement. The

---

[12] There is no uniformity of decisions among the states. One state court has held that an unsuccessful bidder has absolute standing under the competitive bidding statute. See *Quincy Ornamental Iron Works, Inc.* v. *Findlen,* 353 Mass. 85, 228 N.E.2d 453 (1967). Other state courts have found limited standing pursuant to a mandamus statute; see, e.g., *Phoenix* v. *Wittman Contracting Co.,* 20 Ariz. App. 1, 509 P.2d 1038 (1973); or a state land act. See *Alyeska Ski Corporation* v. *Holdsworth,* 426 P.2d 1006 (Alaska 1967). Still another state court has found standing only if the disappointed bidder was a taxpayer. See *Parks* v. *Larson,* 499 Pa. 615, 454 A.2d 928 (1982); accord *Austin* v. *Housing Authority,* 143 Conn. 338, 122 A.2d 399 (1956).

[13] In fact, testimony revealed that the department of administrative services had consistently rejected bids that were signed with a facsimile signature.

construction company which received the contract award was not given any special advantage over the plaintiff in submitting its bid, nor was it privy to any secret information.

Noticeably absent in this case are elements traditionally thought to undermine the competitive bidding process. The commissioner did not apply its requirement inconsistently or in a discriminatory fashion. Nor was there any proof that the commissioner was acting in bad faith. In short, the commissioner made a good faith interpretation of the competitive bidding statute requirements, and applied it in a consistent fashion. The plaintiff was therefore without standing to challenge the award of the contract.

There is error, the judgment is set aside and the case is remanded with direction to dismiss the complaint.

In this opinion the other judges concurred.