[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO STRIKE
This is a contract action in which the plaintiff filed a six-count complaint against the defendant alleging breach of a subcontract agreement, breach of a general contract agreement, violation of General Statutes 4b-95, estoppel, fraudulent misrepresentations and violations of the Connecticut Unfair Trade Practices Act, respectively. The defendant has filed a motion to strike the third count of the plaintiff's complaint on the ground that the third count does not state a cognizable claim under Connecticut law.
The facts as alleged in the complaint are as follows. On August 19, 1993, the plaintiff, a subcontractor, submitted a bid to the defendant, a general contractor, for the plumbing, heating, ventilating and air conditioning portions of work to be done on a project to renovate Shepaug Valley/Middle High School in Washington Depot, Connecticut. The defendant submitted a bid to perform the construction on the project, which bid named the plaintiff as a subcontractor and incorporated the plaintiff's bid. Thereafter, the defendant was awarded the contract and informed the plaintiff that the plaintiff was named subcontractor. The defendant, however, employed another subcontractor to perform the plumbing, heating, ventilating and air conditioning work on the project.
The defendant moves to strike the third count of the CT Page 3066 plaintiff's complaint on the ground that 4b-95, which regulates general bid form requirements for contracts subject to 4b-91 to 4b-100 for construction and alterations of state buildings, does not apply to contracts awarded by municipalities. In opposition, the plaintiff asserts that4b-95 applies to any contracts for construction of public buildings in which there is some state involvement. The plaintiff argues that the present contract involves a public building and is partially state funded and, therefore, 4b-95
applies.
General Statutes 4b-95(c) provides, in part:
 The awarding authority shall not permit substitution of a subcontractor for one named in accordance with the provisions of this section or substitution of a subcontractor for any designated subtrade work bid to be performed by the general contractor's own forces, except for good cause.
In Ardmare Construction v. Freeman, 191 Conn. 497 (1983), the plaintiff, an unsuccessful bidder, sought a writ of mandamus ordering the commissioner of administrative services to award a certain contract to the plaintiff. The plaintiff's request was granted and the commissioner appealed. The court in Ardmare first noted that it "has consistently followed the view that an unsuccessful bidder has no standing to challenge the award of a public contract." Id., 501. However, "`where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of municipal officials,'" an unsuccessful bidder does have standing to challenge the award of a public contract. Id., quoting Spiniello Construction Co. v. Manchester, 189 Conn. 539,544 (1983); see also Unisys Corporation v. Department of Labor, 220 Conn. 689, 694 (1991).
In Unisys Corporation, the court stated, at page 694:
 Although in Spiniello Construction Co. the plaintiff who sought the injunction was a bidder, in Ardmare Construction Co. we did not tailor the remedy solely to that class of persons. Indeed, we quoted with approval from Scanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 864 (D.C. Cir. CT Page 3067 1970), the following: "`[T]he public interest in preventing the granting of contracts through arbitrary or capricious action can properly be vindicated through a suit brought by one who suffers injury as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a "private attorney general."'" (Emphasis added.) Ardmare Construction Co. v. Freedman, supra, 504. In Ardmare Construction Co., we pointed out that the scope of our holding in Spiniello Construction Co. was "to strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the commencement and completion of government projects to the detriment of the public." Ardmare Construction Co. v. Freedman, supra, 505.
In Milward Corporation v. City of Hartford,5 Conn. L. Rptr. 344, 345 (December 6, 1991, Schaller, J.), the issue was whether the above exception applies "to a subcontractor whose general contractor has not been awarded a contract to perform a public works contract, where the subcontractor alleges fraud, corruption, favoritism, or compromise of the bidding process." In holding that the subcontractor lacked standing to challenge the award, the court stated that "while the courts have begun to broaden certain aspects of bidder standing, a subcontractor, not being a party to the bidding and award process for the general contract, has an interest too attenuated to permit standing." Id.
Based on the Milward Corporation case, the plaintiff does not have standing to allege a violation of 4b-95. In Ardmare Construction Co. v. Freedman, supra at 501, the court stated:
 Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. (Citation omitted.)
"If a party is found to lack standing, the court is without CT Page 3068 subject matter jurisdiction to determine the cause." Tomlinson v. Board of Education, 226 Conn. 704, 717 (1993). Whenever the lack of subject matter jurisdiction comes to a court's attention, the court can dismiss the proceeding upon its own motion. Park City Hospital v. Commission on Hospitals Health Care, 210 Conn. 697, 702 (1989).
Based on the foregoing, the court must dismiss the third count of the plaintiff's complaint sua sponte.
It is further noted that General Statutes 4b-100
provides that "[t]he commissioner of public works shall adopt regulations . . . establishing a procedure for promptly hearing and ruling on claims alleging a violation or violations of sections 4b-91 to 4b-100, inclusive." Section 4b-100-3 of the Regulations of Connecticut State Agencies provides, in part,
 Any party whose financial interests may be affected by a decision on a claim alleging a violation(s) of the contract bidding procedures set forth in [4b-91 to 4b-100] may file a petition with the Commissioner [of Public Works] seeking a ruling on whether there has been a violation.
The Commissioner is then required to designate a presiding officer to hear and rule on the claimant's grievance. Regs. Conn. State Agencies 4b-100-7, 4b-100-8
and 4b-100-9. A claimant may appeal the presiding officer's decision to the Commissioner of Public Works. Regs. Conn. State Agencies 4b-100-10. "Thereafter, the Commissioner shall issue a written decision on the ruling and this decision shall be final and conclusive in the matter." Id.
Therefore, the regulations adopted pursuant to General Statutes 4b-100 do not provide for redress to the superior court and for this additional reason the court lacks jurisdiction over the third count of the plaintiff's complaint alleging violations of 4b-95.
For the reasons stated above the court dismisses the third count of the plaintiff's complaint.
HENDEL, J. CT Page 3069