[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Hamilton-Boxer, Inc., d/b/a Gradall Rental, has filed the instant action against the Department of Transportation seeking a temporary restraining order and a temporary and permanent injunction barring the awarding of a contract for the rental of various types of equipment and/or services and requiring the defendant to re-bid the contract at issue. The defendant has filed a Motion to Dismiss on the grounds that the plaintiff has named the wrong defendant, that the plaintiff lacks standing to bring this lawsuit, and that the Court lacks subject matter jurisdiction. For the reasons which follow, the defendant's Motion to Dismiss is granted.
 FACTS
The plaintiff, Hamilton-Boxer, Inc. d/b/a Gradall Rental ("Gradall"), filed a complaint on August 3, 1993, alleging in a single count that the defendant, Emil Frankel, Commissioner of the Connecticut Department of Transportation (Commissioner) failed to include Gradall's name on the Department of Transportation's (DOT) authorized and approved bidders list, thereby depriving Gradall of an opportunity to bid on a public construction contract. The plaintiff alleges that it had rented Gradall grading equipment to the DOT since 1987 under the recognized DOT bid system, which called for the transmittal of invitations to bid to prospective bidders appearing on the DOT's authorized and approved bidders list in or about late November. The plaintiff further alleges that the bids were opened usually in mid-December and the DOT' s contracts were duly awarded to the CT Page 8712 lowest responsible bidders.
In September of 1988, the plaintiff requested to be placed on and was included on the DOT's prospective bidders list for Gradall rental equipment. Thereafter, according to Gradall, it was assured by the DOT that its name would be on all applicable lists for future proposals. After the DOT gave Gradall these assurances, Gradall did receive, without further solicitation, invitations for two bid openings, a contract for 1989 and 1990 and a contract for 1991 and 1992.
The events that took place subsequent to the 1991 and 1992 contract between Gradall and the DOT are the crux of plaintiff's complaint against the DOT. Plaintiff alleges that contrary to its historic practice, the DOT' s invitations to bid for grading equipment for the 1993-1994 contract were not sent to all authorized and approved contractors on the DOT's list. Gradall did not receive an invitation to bid. Furthermore, the DOT invited bids for the 1993-1994 contract year on or about October 5, 1992, much earlier than the normal time frame of November, 1992. Moreover, claims Plaintiff, in derogation of the DOT's historical policy, the two-year grading equipment bid for 1993-1994 was opened on November 3, 1992 rather than in mid-December. Plaintiff claims that because of the DOT's mistake, only the very few bidders who had recently been added to the approved bidders list received a timely invitation and were able to bid, along with those contractors who saw the public bid notice in the newspaper or who happened to be on other bidder lists.
On November 3, 1992, plaintiff telephoned the Department of Administrative Services (DAS) to inquire when the invitation to bid for 1993-1994 work would be sent out, only to be told that the bid packages had been opened that morning and that, therefore, it had missed out on submitting a bid. Thereafter, the DOT admitted that an error had been made in not sending Gradall an invitation to bid, and the DOT indicated that a supplemental bid invitation would be mailed out by DAS to remedy the situation. After a couple of weeks, the plaintiff again called about the proposed supplemental bid and was told at that time that "supplemental" meant all primary/original bidders would be called upon first and only if they were unable or unavailable would the supplemental bid list then be accessed. The DAS contends that the missed bid opportunity was the plaintiff's fault because plaintiff did not look in The Hartford Courant's legal column. The plaintiff asserts that since it was on the CT Page 8713 DOT's automatic notification list, it was under the impression that it was not necessary for Gradall to look in The HartfordCourant legal section.
 DISCUSSION
As a result of the defendant's alleged mistake, plaintiff claims it has no adequate remedy at law and will suffer irreparable harm if the contract wrongly let by the DOT is permitted to go forward. Therefore, plaintiff seeks a temporary and permanent injunction barring the subject contract from being performed as awarded, and requiring the defendant to reopen the bidding process for such contract. On August 27, 1993, the defendant filed a motion to dismiss the complaint on the grounds that plaintiff failed to name the appropriate defendant(s), that plaintiff does not have standing to sue, and that this Court lacks subject matter jurisdiction in that the doctrine of sovereign immunity bars the plaintiff's cause of action.
"A motion to dismiss . . . 'properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991) (Citations omitted). "Regardless of the phraseology in the nature of the conclusion employed by the pleader, if the face of the record indicates that the court is without jurisdiction, the complaint must be dismissed." Upson v.State, 190 Conn. 622, 626, 461 A.2d 991 (1983).
A motion to dismiss may be used to challenge standing. See,Reitger v. Board of Trustees of State Colleges, 2 Conn. App. 196,201, 477 A.2d 129 (1989). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." Tomlinson v. Board ofEducation, 226 Conn. 704, 771, 629 A.2d 333 (1993), (citation omitted).
It is well established that an unsuccessful bidder has no standing to challenge the award of a public contract. ArdmareConstruction Co. v. Freedman, 191 Conn. 497, 501, 467 A.2d 674
(1983) "A bid, even the lowest responsible one, submitted in response to an invitation for bids is only an offer which, until CT Page 8714 accepted by the municipality, does not give rise to a contract between the parties." John J. Brennan Construction Corp. v.Shelton, 187 Conn. 695, 702, 448 A.2d 180 (1982), (citation omitted). "Not unlike any other person whose offer has been rejected, the disappointed (or unsuccessful] bidder has no right to judicial intervention." Ardmare Construction Co. v. Freedman,191 Conn. at 502. An exception to the rule against bidder standing exists where the plaintiff alleges "fraud, corruption, or favoritism" and compromise of the "very object and integrity of the bidding process." Spiniello Construction Co. v.Manchester, 189 Conn. 539, 544, 456 A.2d 1199 (1983).
Plaintiff contends that, at the very least, it is entitled to establish standing at an evidentiary hearing pursuant to our Supreme Court's decision in Unisys Corp v. Dept. of Labor,220 Conn. 689, 600 A.2d 1019 (1991). This Court disagrees. TheUnisys Corp. case and the present case are readily distinguishable. First, in Unisys Corp., the plaintiff alleged that the requests for proposals issued by the state in the state's bidding process were not based on competitive bidding as required by General Statutes § 4a-57. In the present case, the plaintiff makes no such allegation, nor could such an allegation be made on the facts listed in the complaint.
Second, in Unisys Corp., the plaintiff argued that it was prevented from submitting a bid because the proposals requested "single source" specifications. In other words, the proposals' specifications were limited to the make, model number and particular equipment and software available only from one particular contractor. Id. at 691. As a result of such proposal specifications, the plaintiff did not submit a bid. Thus, the plaintiff alleged the state engaged in acts of favoritism to the supplier of the single source specifications. The plaintiff further alleged that such acts undermined the object and integrity of the competitive bidding process. The court agreed and held that the plaintiff was entitled to an evidentiary hearing on the state's motion to dismiss to determine if the plaintiff had standing to sue.
In the present case, the plaintiff does not, nor could it properly, allege that the defendant's proposals called for "single source" specifications. More importantly, unlike the plaintiff in Unisys Corp. whose allegations were sufficient to support a claim of favoritism and place it within the exception to the bidder standing rule, the plaintiff in the present case CT Page 8715 does not allege facts sufficient to place it within this exception. None of the allegations in the complaint support a claim of fraud, corruption, or favoritism. The plaintiff basically argues that because the defendant failed to notify the plaintiff after making assurances that defendant would do so, the plaintiff is aggrieved and, thus, has standing to enjoin the defendant from letting its public construction contract to another contractor.
However, these allegations, alone, are not sufficient to place the plaintiff within the exception to the bidder standing rule. The provisions of the Connecticut General Statutes do not require the defendant to make available an authorized and approved bidders list. Having chosen to comprise such lists, the defendant conceded that its failure to submit to the DAS the list which included the plaintiff's name as well as the names of other contractors was an inadvertent mistake. However, while defendant acknowledged its mistake and placed plaintiff's name on the supplemental bidders list, such action was not required because it is not mandated by statute.
Moreover, the General Statutes do not require defendant to automatically notify all authorized and approved bidders of the date on which the defendant accepts bids. The defendant's posting of a legal notice in various newspapers, including The HartfordCourant, informing the contractors of the date on which it would accept bids for the public construction contract, was sufficient to satisfy the requirements of General Statutes § 4a-57 etseq. Indeed, as previously noted, Plaintiff's complaint is barren of any allegations of fraud, corruption, or favoritism in the bidding process.
In carving out the exception to the bidder standing rule, our Supreme Court has attempted to "strike the proper balance between fulfilling the purposes of the competitive bidding statutes and preventing frequent litigation that might result in extensive delay in the commencement and completion of government projects to the detriment of the public." Ardmare Construction Co. v.Freedman, 191 Conn. at 505. In the case at bar, the relief requested by the plaintiff is precisely that which the Supreme Court frowns upon. As pointed out above, in Ardmare the Supreme Court cautioned that, in construing bidding statutes, we must prevent "frequent litigation that might result in extensive delay in the commencement of government projects to the detriment of the public." Id., at 505. To award plaintiff relief based on the CT Page 8716 facts alleged in the complaint would result in an unnecessary and extensive delay in the commencement of the public construction project. Accordingly, the defendant's motion to dismiss the complaint is hereby granted.[1]
 CONCLUSION
The allegations of the complaint do not suggest any wrongdoing on the part of the defendant. There exist no allegations of fraud, corruption, favoritism or compromise of the bidding process. Therefore, plaintiff lacks standing to bring this cause of action against the defendant. Accordingly, defendant's motion to dismiss is granted and plaintiff's complaint is hereby dismissed in its entirety.
IT IS SO ORDERED.
Dated at Hartford, Connecticut, this 9th day of February, 1994.
BY THE COURT,
ESPINOSA