[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, lowest bidder on a state project to restore Gillette Castle, but ruled unqualified by the defendant State Department of Public Works (hereinafter DPW), seeks an injunction restraining the DPW, and the successful, qualified bidder, defendant Thomas J. Kronenberger and Sons Companies, Inc.(hereinafter Kronenberger), from performing any further work on the project, and an order declaring the contract with Kronenberger illegal and void ab initio.
In its complaint plaintiff alleges DPW exhibited unlawful favoritism in awarding the contract to Kronenberger so as to undermine the object and integrity of the public bidding statutes, violated its own regulations in rejecting plaintiff's administrative bid protest, and violated C.G.S. Sec. 4b-91
requiring a contract be awarded within sixty days after bids are opened.
The DPW's motion to dismiss for lack of plaintiff's standing was denied by Judge David Fineberg, and Kronenbenger's motion to dismiss on the same ground was denied by this court.
The facts are as follows: Gillette Castle, an historic castle-like structure, overlooks the Connecticut River in East Haddam, Connecticut. It is owned by the State of Connecticut and listed on the National Register of Historic Places. The building being much in need of repair, in April, 1998 DPW put out for bid a project to restore it. Plaintiff, Rudolf Netsch Construction Co., Inc., a general contractor, was the low bidder, but on reviewing subcontractors' qualifications, DPW elected to reject all bids, modify the design, and alter the specifications.
On or about June 22, 1998 DPW rebid the project. The "Proposal Form" bidders were required to fill out provided, "The intention of the Objective Criteria that are included in the specifications of this project is to assure that State of Connecticut will secure the `lowest responsible and qualified bidder' who has the ability and capacity to successfully complete the bid."
Under subsection "3. Specialist Qualifications" the project data sheet provided, "BIDDERS MUST SUBMIT the following CT Page 584 information on the Special Contractor's Qualifications WITH HIS BID. Failure to submit this information may be cause for rejection of the bid. . . . 6G. Five (5) projects of a similar nature completed by the specialty contractor within the last 10 years."
"Similar nature" was defined as meaning as to stone restoration: "Section 04420 Work of an historic nature with fieldstone, contracts of a range between $400,000 and $600,000 in cost, work in high places, work involving close coordination of built in flashing work and back-up masonry."
"Similar nature" was defined as meaning as to masonry: "Section 04200 Work involving accurate masonry construction incorporating built in flashings, special mortars, wall ties, work of an historic character, work involving coordination with roofing and framing, work in high places, contracts in the range of $200,000 to $400,000 in cost."
The project data sheet also stated, "5. The Department of Public Works will be the sole judge of the acceptability of Specialty Contractor's qualifications."
On the form titled "Special Subcontractor Qualification Statement", the following printed language appears: "All bidders are required to file this form properly completed WITH THEIRPROPOSAL. Failure of a bidder to answer any question or provide required information may be grounds for the awarding authority to disqualify and reject their bid."
Plaintiff bid designated Sebastian J. Damiata as its subcontractor for both stone restoration and unit masonry. In plaintiff's proposal Damiata states its qualifications in a letter to DPW as follows: "In accordance with your request and specification section 04200 and 04420, we have selected a specific list of historic buildings of which we have provided the masonry." It lists two: Building 50 Veterans Home Rocky Hill, CT., contract amount $110,000; and Levi E. Coe Library, Middlefield, Ct., contract amount $18,500.
The bids were opened on August 5, 1998. Plaintiff's bid was the lowest at $1,799,000. The DPW first reviewed the bids for responsiveness and found plaintiff's to be responsive, notwithstanding the non-material failure to submit all the requested subcontractor qualification statements. CT Page 585
In evaluating plaintiff's bid to determine if plaintiff was qualified, DPW, puzzled by the absence of documentation supporting Damiata meeting the masonry requirements of Section 04200 and the stone restoration requirements of Section 04420, wrote to plaintiff on August 17, 1998, for clarification. Plaintiff met with representatives of the DPW on September 16, 1998 and submitted a list of projects it believed met all the specific items of the two above-numbered Sections.
On September 25, 1998 DPW wrote to plaintiff to the effect its bid proposal of August 5, 1998 had been rejected. The reason given was: "After carefully reviewing Netsch's bid, supporting documentation, and September presentations, the DPW has determined that Netsch is not qualified to perform the work on the Project as set forth in the Project's specifications. . . . Section 04420 sets forth the requirements for the stone restoration portion of the Project and requires the bidder to list at least (5) projects, works of an historic nature, with fieldstone, contracts of a range between $400,000 and $600,000 in cost, work in high places, work involving close coordination of built-in flashing and back-up masonry. It also requires that the contractor match existing stone and mortar.
"Netsch' s submittals for this specification do not contain any project in excess of $110,000. The projects do not specifically deal with masonry restoration. The submittals for historic projects do not include fieldstone (except Fort Griswold) and do not involve restoration work. Further the three projects listed in excess of $200,000 do not involve restoration of stone work; rather they were for brick and block wood.
"Similarly, the projects listed as supportive of its qualifications under section 04200 do not meet the specifications requirements for special mortars, work of an historic character, and work in high places. Other referenced projects are not of the size required by the specifications."
After rejecting plaintiff's bid, DPW undertook to review the bid of Kronenberger, the next lowest bidder at $1,994,000, for the qualifications of its subcontractors. Kronenberger had designated as its specialty subcontractors Connecticut Stone Erectors (hereinafter Conn. Stone) for stone restoration and Marino Masonry Inc. for masonry. Kronenberger's bid proposal stated in support of Conn. Stone's qualifications five projects: CT Page 586 Harkness Memorial Park, Waterford, CT.; Litchfield Courthouse, Litchfield, CT.; Saint Sebastian Church, Middletown, Ct.; Phoenix Insurance Cliff House, Avon, CT.; and Northam Tower, Trinity College, Hartford, CT.. It listed in support of Marino Masonry, Inc.'s qualifications eight projects.
DPW hired architect Roger Clark to investigate Conn. Stone's projects. He determined four were of an historic nature (Harkness Memorial State Park, Litchfield Courthouse, Saint Sebastian Church, and Northam Tower, Trinity College), and four were in the range of $400,000 to $600,000 (Saint Sebastian Church and Harkness Memorial State Park listed in the bid proposal, plus Greenwich Library and Founders Bridge, added by Conn. Stone. In his summary Clark concluded, "The projects described involve historic buildings, cut stone and granite as opposed to `field stone,' and contracts ranging from $60,000 to $785,000 in cost, including several in the range from $400.000 to $600,000. The contractor worked well in situations where close coordination was required between flshings, back up masonry and existing conditions."
When plaintiff learned DPW intended to award the project to Kronenberger, it filed a bid protest pursuant to Conn. Agencies Regs. Sec. 4b-100-1 et seq., Its protest was not based upon DPW's rejection of its bid, but rather on the claim that Kronenberger's subcontractors did not meet the objective criteria that were applied to deny plaintiff the contract. DPW turned down the protest on the grounds that plaintiff's claim was "not proper subject for a petition under Conn. Gen. Stat. Sec. 4b-100."
Plaintiff appealed the rejection on procedural grounds of its bid protest to the Commissioner of DPW. The Commissioner appointed a Bureau Chief to hear the appeal. After a hearing, the DPW ruled against the plaintiff both on procedural grounds and on the substantive merits of its claim. The decision said:
"After rejecting Netsch's Bid Proposal, the DPW conducted its due diligence review of Kronenberer's bid proposal using the identical Objective Criteria for Evaluating Qualifications of Bidders and concluded that Kronenberger was qualified to perform the work of the Project. In response to the Specifications Section 04420 and 04400 [sic] Statement, Kronenberger provided documentation indicating its subcontractor had performed work of an historic nature for at least eight projects, six of which ranged from $200,000 to $600,000 and four of which were in excess CT Page 587 of $400,000. These projects also included stone masonry and restoration work, work for special mortars and work in high places."
The decision also stated that in the bid documents the DPW reserved the right to determine the responsiveness of the bid proposals and it properly exercised that discretion in deciding Kronenberger's proposals were responsive.
On November 30, 1998 DPW awarded the contract to Kronenberger which commenced work on the project almost immediately. The court inspected the site in August, 1999 with all counsel present and heard some evidence on the progress of the work. As of the last hearing in October, 1999, the project was about 55% completed with the completion date of June 4, 2000, expected to be met.
C.G.S. Sec. 4b-92 defines the "lowest responsible and qualified bidder" to mean, "[T]he bidder whose bid is the lowest of those bidders possesssing the skill, ability and integrity necessary to faithful performance of the work based on objectivecriteria considering past performance and financial responsibility." (underlining added)
The statute further provides, "In considering past experience the awarding authority shall evaluate the skill, ability and integrity of bidders in terms of bidders' fulfillment of contract obligations and of bidders' experience or lack of experience with projects of the size of the project for which the bids are submitted." (underlining added)
The two significant elements of the statute are first, that the chose of bidder is to be based on objective criteria, and second, that the awarding authority, while applying such criteria, shall, nevertheless, exercise judgment in evaluating the qualifications of bidders. As the Supreme Court said inAustin v. Housing Authority, 143 Conn. 338, 346-47 (1956), "Of necessity, however, the determination whether a bidder is `responsible,' when there is any question concerning his responsibility, requires the exercise of judgment, and, therefore, the making of the award is not always merely a ministerial function. . . . The reason for all this is that the purpose of the statute is to assure a proper expenditure of public money, and this often requires the exercise of sound business judgment." CT Page 588
In addition to the requirement that objective criteria be applied in the exercise of sound judgment, is the necessity that no special favoritism be shown to any bidder over the others that would imperil the integrity of the bidding process. Thus inSpiniello Construction Co. v. Manchester, 189 Conn. 539 (1983) where a low bidder (Raymond) had been allowed by the town of Manchester to file a reduced combined bid on two separate contracts up for bid conditional on both contracts be awarded to him, a privilege not permitted of the other bidders, the court affirmed an injunction barring acceptance of the low bid. The court said, "By permitting Raymond to submit a conditional bid when other bidders were not afforded the same opportunity, Manchester precluded the other bidders from competing on equal terms. It defeated the object and integrity of the competitive bidding by unintentionally exhibiting favoritism to Raymond," at 544-45.
Plaintiff asserts this Spiniello principle as the basis for its claim in this case. While conceding it should not be awarded the Gillette Castle contract, it asserts neither should Kronenberger and brings this suit "`"in the public interest by one acting essentially as a "private attorney general."'" ArdmareConstruction Co. v. Freedman, 191 Conn. 497, 504 (1983), quotingScanwell Laboratories, Inc. v. Shaffer, 424 F.2d 859, 864 (D.C. Cir 1970).
The essence of plaintiff's claim is that the objective criteria were applied inconsistently. Plaintiff asserts they were used to deny plaintiff the contract while Kronenberger, which also did not comply with them, was, nevertheless, awarded the contract. This, plaintiff argues, is undue favoritism prohibited by Spiniello.
All the parties agree the objective criteria here are the qualifications for specialty contractors in Section 04420 for stone restoration (work of an historic nature, with fieldstone, contract range $400,000 to $600,000, work in high places, close coordination of built in flashing and back-up masonry.) and in Section 04200 for masonry (work involving accurate masonry construction, etc.) The controversy is over the relationship between the criteria and the requirement in the bid documents that the bidders submit "Five (5) projects of a similar nature [to the Gillette Castle] completed by the Specialty Contractor within in the last 10 years." The plaintiff interprets the documents to mean that "the specifications required five projects CT Page 589each of which exhibited all of the elements . . . [t]hat is five separate projects each of which" were of an historic nature, fieldstone construction, in the cost range of $400,000 to $600,000, involved work in high places, and involved close coordination of flashing and masonry.
DPW disagreed with plaintiff's reading of the bid documents. It properly interpreted the requirement of submitting five projects of a similar nature as meaning exactly what it says, namely, relating to submittals by the bidders accompanying their proposals. Failure to submit the requested documentation raised questions as to the responsiveness of the proposals, not as to the ultimate issue of qualifications of the bidders. DPW found the proposals submitted by both plaintiff and Kronenberger responsive. It was the sole judge of that because the statement in the documents provided, that failure to provide required information "may be grounds for the awarding authority to disqualify or reject their bid." Furthermore, DPW did not reject plaintiff on the incompleteness of the information in its proposal and so apply a different standard to it than to Kronenberger.
As to what the criteria meant, Roger Clark, an architect hired by DPW, to investigate the qualifications of plaintiff's and Kronenberger's subcontractors, construed the primary criterion to be price range of jobs done by the subs, (for stone restoration, $400,000 to $600,000; for masonry, $200,000 to $400,000). Only jobs in that range were considered to meet the other criteria (work of an historic nature, field stone, etc.). The DPW did not adopt Clark's gloss. It evaluated all the information in the bid proposals of plaintiff and Kronenberger relating to the subcontractors and applied all the criteria in Sections 04420 and 04420 to determine, first as to plaintiff and then as to Kronenberger, whether or not each was a "responsible and qualified bidder". It did not compare their qualifications, but decided if each met the objective criteria separately and independent of the other.
DPW did not automatically disapprove of plaintiff because its subcontractors did not have five or any specific number of projects meeting each or all of the criteria. Rather, it evaluated the entire information it obtained about plaintiff's subcontractors. As for the specifications of Sec. 04420 (Stone restoration), it found submittals on behalf of plaintiff's subcontractor "do not contain any project in excess of $110,000. CT Page 590 The projects presented do not specifically deal with masonry restoration The submittals for historic projects do not include fieldstone (except Fort Griswold) and do not involve restoration work."
As for the specifications of 04200 (masonry), it found plaintiff's subcontractor did "not meet the specification requirements for special mortars, work of an historic character and work in high places. Other referenced projects are not of the size required by the specifications." Accordingly, DPW informed plaintiff that it was not qualified to perform the work and rejected its bid pursuant to C.G.S. Sec. 4b-92.
DPW then conducted a due diligence review of Kronenberger's bid proposal using the identical objective criteria contained in Sections 04420 and 04200. It took note of the number of projects of Kronenberger's subcontractor that met the criteria, but did not hold to the magic number of five for all or any one of the criteria. In fact, Kronenberer's sub submitted no project involving fieldstone. But taking the submittal as a whole it found, "In response to the Specifications Section 04420 and 04400 Statement, Kronenberger provided documentation indicating its subcontractor had performed work of an historic nature for at least eight projects, six of which ranged from $200,000 to $600,000 and four of which were in excess of $400,000. These projects also included stone masonry and restoration work, work for special mortars, and work in high places." DPW concluded Kronenberger was responsible to perform the work of the project.
In evaluating plaintiff and Kronenberger, DPW did not use different criteria for each or criteria not listed in Sections 04420 and 044200. DPW had the right to weigh the criteria and give different values to them. To the extent DPW did this, it applied the criteria the same way for plaintiff and Kronenberger. Nor did DPW give Kronenberger any information different than it gave Kronenberger as to the manner it was applying the criteria. InArdmare Construction Co. v. Freedman, supra, where the state commissioner of administrative services disqualified a bid because it did not have the handwritten signature of the bidder, the court upheld the commissioner, saying, "In this case, however, the commissioner had not informed any bidder of its requirement. The construction company which received the contract award was not given any special advantage over the plaintiff in submitting its bid, nor was it privy to secret information." 191 CT Page 591591 Conn. at 505-06.
Thus, the court finds DPW exhibited no undue favoritism in reaching its conclusion. It applied the same objective criteria to both plaintiff and Kronenberger in the same way. It evaluated the bid proposals of both bidders against those criteria and determined plaintiff was not qualified and Kronenberger was. In making that judgment it was fulfilling its statutory duty under Sec. 4b-92 to choose the "lowest responsible and qualified bidder . . . possessing the skill, ability and integrity necessary to faithful performance of the work based on objective criteria. . . . In considering past performance, the awarding authority shall evaluate . . . the bidders' experience or lack of experience with projects of the size of the projects for which the bids are submitted."
The second basis plaintiff asserts to restrain DPW from permitting Kronenberger to perform the contract is that plaintiff's administrative bid protest was denied on improper procedural grounds, namely, that the protest was based on the inadequacy of Kronenberger's qualifications which was deemed "not a proper subject for a petition under Conn. Gen. Stat. Sec.4b-100.". While there may or may not be some merit to plaintiff's assertion, the DPW's ruling did not cause plaintiff any significant prejudice because plaintiffs appealed to the Commissioner on the same grounds as its bid protest. That appeal was heard on its merits and rejected.
Finally, plaintiff asserts the contract with Kronenberger is illegal because it was not entered into within sixty days of the opening of the bids, as stated in C.G.S. Sec. 4b-91. The DPW interprets that time requirement as directory and not mandatory because as a practical matter the procedure for determining bidders' qualifications can take longer than sixty days. This court agrees with that interpretation, holding the time requirement is not a matter of substance but rather one of convenience. International Brotherhood of Teamsters v. Shapiro,138 Conn. 57, 58 (1951; Ambrogio v. Bd. of Firearms permit Exam.42 Conn. Sup. 157, 163 (1992).
Based on the foregoing, judgment may enter in favor of the defendants.
Robert Satter Judge Trial Referee CT Page 592