AAIS CORPORATION *v.* DEPARTMENT OF ADMINISTRATIVE SERVICES ET AL.
(AC 26071)

Dranginis, DiPentima and Gruendel, Js.

Argued October 18, 2005—officially released January 24, 2006

*Thomas A. Kaelin*, for the appellant (plaintiff).

*Eileen Meskill*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. The dispositive issue in this appeal is whether the exclusion of a bidder from consideration for a state contract because of the bidder's suspected prior criminal activities constitutes favoritism to other bidders so as to grant the excluded bidder standing to seek injunctive relief against the state. We conclude that such exclusion does not constitute favoritism and, therefore, affirm the judgment of the trial court.

Prior to setting forth the facts and procedural history that inform our disposition of this appeal, we note the procedural posture of this case. The plaintiff, AAIS Corporation, brings this appeal following the court's granting of the motion to dismiss for lack of standing that was filed by the defendants, the department of administrative services (department) and its commissioner, Barbara A. Waters. "A motion to dismiss for lack of standing attacks the jurisdiction of the court, asserting essentially that the plaintiff cannot as a matter of law or fact state a claim that should be heard by the court. . . . In ruling on a motion to dismiss, the court must take the facts alleged in the complaint as true, construing them in the manner most favorable to the pleader.[1]

---

[1] The parties agreed that the court also could consider those portions of the request for proposals and other documentary evidence that the parties had attached to their respective pleadings. To the extent that the court had before it the information included in these documents, we consider the facts contained therein as well. See also Practice Book § 10-29 (a).

. . . The party seeking the exercise of the court's jurisdiction bears the burden of alleging facts that clearly demonstrate that it is the proper party to invoke judicial resolution of the dispute. . . . [Additionally] [b]ecause a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Citations omitted; internal quotation marks omitted.) *Capasso Restoration, Inc.* v. *New Haven*, 88 Conn. App. 754, 758–59, 870 A.2d 1184 (2005).

In August, 2003, the department issued a request for proposals for asbestos, lead and mold removal services. The request covered services to be supplied over the course of a five year period, with the ability for the department to renew the contract for an additional five years. The plaintiff, a Connecticut corporation that has provided the requested services since approximately 1986, submitted a proposal to the department on September 19, 2003, which was within the time period allotted for the submission of proposals. In January, 2004, the department informed the plaintiff that it was excluding the plaintiff from consideration of the contract award. The department indicated to the plaintiff that this action was taken for two reasons: (1) a current employee and previous officer and minority shareholder of the plaintiff had pleaded guilty to mail fraud in connection with a project for the city of Bridgeport, and (2) the department was concerned that a previous contract awarded to the plaintiff may have been obtained in a suspect manner.

Following that notification by the department, the parties met in an informal meeting, at which the plaintiff attempted to assuage the qualms the department had about considering its proposal. Despite that meeting, the department continued to abide by its previous decision to exclude the plaintiff's proposal from consideration. The department informed the plaintiff that it excluded the plaintiff from consideration because it

was not assured by the measures taken by the plaintiff to insulate itself from further corruption by the employee.[2] Specifically, the department considered the transfer of the employee's 44 percent ownership interest in the corporation to his wife to be an inadequate security measure, especially because the employee retained his job doing the same work for the plaintiff, but without the capacity to bind the plaintiff financially.

The plaintiff filed suit in the Superior Court in the judicial district of Hartford, alleging that it was the lowest responsible bidder for the contract and claiming that, in refusing to consider its proposal, the department used criteria to evaluate the plaintiff that was not used for the evaluation of other bidders and their proposals, and thereby engaged in favoritism toward the other bidders.[3] The plaintiff sought permanent injunctive relief against the defendants and an order that the defendants make an additional award of the contract to the plaintiff. The defendants filed a motion to dismiss, claiming that the plaintiff had not alleged facts sufficient to have standing to pursue its exclusion as a bidder or to establish waiver of sovereign immunity. The court granted the defendants' motion to dismiss, and this appeal followed.

---

[2] The plaintiff had presented documentation satisfying the department that the plaintiff had not obtained work from the previous bid in a suspect manner. The department, however, remained concerned about the employee's role in obtaining business for the plaintiff and the fact that the plaintiff would have benefited, even if indirectly or unknowingly, from the employee's criminal activities. Additionally, the department was concerned that the employee, who is the son of the corporation's president, still worked for the plaintiff in substantially the same capacity as he had when he had been involved in criminal activities.

[3] The plaintiff also alleged other facts and asserted other legal claims to overcome the hurdle of sovereign immunity. Although the defendants responded to those claims in their motion to dismiss, because sovereign immunity did not serve as the basis for the court's judgment, we do not consider those claims in deciding the plaintiff's appeal.

On appeal, the plaintiff challenges the court's conclusion that it did not allege facts sufficient to surmount the standing hurdle facing an unsuccessful bidder. Generally, in the context of government contracting, unsuccessful bidders lack standing to pursue judicial challenges. That is because "[a] bid, even the lowest responsible one, submitted in response to an invitation for bids is only an offer which, until accepted by the [department], does not give rise to a contract between the parties." *John J. Brennan Construction Corp.* v. *Shelton*, 187 Conn. 695, 702, 448 A.2d 180 (1982). The only exception to that lack of standing is "where fraud, corruption or favoritism has influenced the conduct of the bidding officials or when the very object and integrity of the competitive bidding process is defeated by the conduct of . . . officials . . . ." (Internal quotation marks omitted.) *Ardmare Construction Co.* v. *Freedman*, 191 Conn. 497, 501, 467 A.2d 674 (1983). In this instance, the plaintiff claims that considering the prior criminal history of an employee and former officer and owner of the corporation, and excluding the plaintiff from the bidding process on that basis constituted favoritism because the department applied to the plaintiff criteria that was not applied to other bidders. The plaintiff claims that this process not only constituted favoritism toward the other bidders, but that it also defeated the integrity of the bidding process.

In considering the plaintiff's claim, we first note that the department has broad discretion in considering proposals for government contracts.[4] Although proposals

---

[4] The plaintiff claimed at oral argument that criteria different from those applied to bidders applied to proposers, although the plaintiff did not raise that issue at trial or in its brief. We note that the same statutes, and in fact the same subsections of those statutes, refer to the criteria that the department may apply to both proposers and bidders. See General Statutes § 4a-59. Although the statutory language at times refers only to proposers or only to bidders and at times refers to both bidders and proposers, we find it incongruous that the legislature would permit the department to consider the integrity of bidders but not the integrity of proposers, as the plaintiff maintains. Because the statute permits the department to consider,

or bids are evaluated by objective criteria published by the department; see General Statutes § 4a-59 (b); the department has the ability to waive minor defects in a proposal or to reject in whole a proposal in the event the department believes such action to be advantageous to the state. See General Statutes § 4a-59 (b) and (d). Furthermore, in considering whether a bidder is the "lowest responsible qualified bidder," the department may consider, in addition to the objective criterion of price, the past performance of the bidder, which includes that bidder's skill, ability and integrity. General Statutes § 4a-59 (c). The assessment of those criteria necessarily includes some subjective analysis by the department; that subjective analysis, however, does not carry with it the imprint of favoritism, but rather is a wholly permissible exercise of the department's discretion unless favoritism otherwise is illustrated.

Our review of relevant cases decided by this court and our Supreme Court leaves us with the conclusion that the plaintiff in this case has failed to allege facts sufficient to support a claim that the department exhibited favoritism by excluding its proposal from consideration. See, e.g., *Unisys Corp.* v. *Dept. of Labor*, 220 Conn. 689, 600 A.2d 1019 (1991); *Ardmare Construction Co.* v. *Freedman*, supra, 191 Conn. 497; *Spiniello Construction Co.* v. *Manchester*, 189 Conn. 539, 456 A.2d 1199 (1983); *Capasso Restoration, Inc.* v. *New Haven*, supra, 88 Conn. App. 754. Unlike those cases, in which the facts alleged were sufficient to support a claim of favoritism and, thereby, sufficient to grant standing to the unsuccessful bidder, in this instance, there was no allegation that any ex parte communications with other bidders took place or that the department was favoring the use of one brand of product over another in the

in all respects, what proposal or bid is most advantageous to the state, we conclude that such consideration implicitly includes the evaluation of the integrity of proposers in addition to the integrity of bidders.

bidding process itself. See *Unisys Corp.* v. *Dept. of Labor*, supra, 689; *Spiniello Construction Co.* v. *Manchester*, supra, 539. Furthermore, we note that if the department has the discretion to exclude a proposal from consideration because it does not have a handwritten signature; see *Ardmare Construction Co.* v. *Freedman*, supra, 499; then surely the department has the discretion to exclude a proposal from consideration when the department determines that the bidder has not insulated itself sufficiently from the suspicion of criminal activity. Rather than undermining the integrity of the bidding process, the department's actions in this instance sought to preserve the integrity of that process, a function well within the department's discretion.

The judgment is affirmed.

In this opinion the other judges concurred.